542 A.2d 1328
Norman LEVENTHAL, Alan Leventhal and Edwin Sidman,
t/a Philadelphia HSR Limited Partnership

v.

The CITY OF PHILADELPHIA, the Department of Revenue
of the City of Philadelphia, and the Pennsylvania
Convention Center Authority.

Supreme Court of Pennsylvania.

Argued Jan. 21, 1988.

Decided May 24, 1988.

234

Henry W. Sawyer, III, Philadelphia, for petitioner.

Barbara W. Mather, Richard J. Gold, First Deputy City Solicitor, Seymour Kurland, Philadelphia, for respondent.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

OPINION OF THE COURT

PAPADAKOS, Justice.

This opinion follows pursuant to our per curiam Order of January 22, 1988, affirming the order of a specially-appointed three-judge panel of the Court of Common Pleas of Philadelphia County which upheld the constitutionality of the Convention Center Authority Act of 1986 [1] and the Hotel Room Rental Tax [2] under both the Pennsylvania and the United States Constitutions. By order dated January 19, 1988, we granted the joint Petition for Extraordinary Jurisdiction [3] of Norman Leventhal, Alan Leventhal and Edwin Sidman, t/a Philadelphia HSR Limited Partnership, Appellant/Plaintiff in this action, and the City of Philadelphia, the Department of Revenue of the City of Philadelphia, and the Pennsylvania Convention Center Authority, Appellee/Defendants herein.

We assumed plenary jurisdiction in this matter to decide the narrow issue of whether the Convention Center Authority Act and the Hotel Room Rental Tax are constitutional as applied to Appellant under the Pennsylvania and the United States Constitutions. The challenge here is directed only to that portion of the tax which is dedicated to the Convention Center, and not to the past and continuing support for the Convention and Visitors Bureau. [4] Resolution of the issue before us depends on whether our holding in *Allegheny*

1. Act of June 27, 1986, P.L. 267, No. 70, § 1, 53 Pa.S. §§ 16201, *et seq.*
2. Philadelphia Code, §§ 19–2400, *et seq.* enacted by Ordinance of City Council (Bill No. 1013) approved October 24, 1986.
3. 42 Pa.C.S. § 726 provides as follows:

 **§ 726. Extraordinary jurisdiction**

 Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court or district justice of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done. 1976, July 9, P.L. 586, No. 142, § 2, effective June 27, 1978.

4. Prior to the enactment of the Act, Philadelphia was imposing a 3% tax on hotel room rentals to support the Philadelphia Convention and Visitors Bureau.

*County v. Monzo,* 509 Pa. 26, 500 A.2d 1096 (1985), is applicable to the facts presented in this case.

On June 27, 1986, the General Assembly enacted the Convention Center Authority Act (Act), 53 Pa.S. § 16201, *et seq.,* which, among other things, created the Authority, 53 Pa.S. § 16204, and authorized cities of the first class to impose a hotel room rental tax, in part, for the use of the Authority for convention center purposes. 53 Pa.S. § 16223(b). In the event that construction of the main convention area is not commenced by December 31, 1988, all revenues collected under the tax can only be used for tourist promotion agency purposes, and not for convention center purposes. 53 Pa.S. § 16223(d)(5). Prior to the enactment of this Act, Philadelphia was imposing a three percent (3%) tax on hotel room rentals to support the Philadelphia Convention and Visitors Bureau.

Pursuant to the Act, Philadelphia's City Council enacted a Hotel Room Rental Tax (Tax). Phila.Code § 19–2401, *et seq.* Philadelphia is the only city of the first class in Pennsylvania. The Tax imposes an excise tax on the consideration that each operator of a hotel in the City of Philadephia receives from each transaction of renting a room or rooms to accommodate transients. Phila.Code § 19–2402. The Tax only applies to hotels in the City of Philadelphia. *Id.* Among other things, the Tax requires that each operator of a hotel: 1) collect the tax from its patrons and pay the tax over to the City; 2) transmit to the Department of Revenue (Department) on or before the twenty-fifth (25th) day of each month, a return for the month preceding the month in which the return is made, reporting the amount of consideration received from each transaction during the month for which the return is made, the amount of tax due from that operator for that month, and such other information as the Department may require; and 3) maintain records, including, but not limited to, the number of transactions in each hotel reflected on an hourly, daily, or weekly basis, the rate(s) charged for each occupancy, the consideration received from each transaction during the month for

which each return is made, as well as any other information as the Department may require. Phila.Code § 19–2405. If an operator of a hotel fails to collect the tax, or pay the tax over to the City when due, that operator will be liable to the City for payment of the tax. Phila.Code § 19–2405(2).

The Tax authorizes the Department to collect the tax from each hotel operator and deposit a portion of the revenues in a special fund for the use of the Authority for convention center purposes, which include: 1) projected annual debt service or lease payments of the Authority; 2) costs associated with financing, constructing, improving, maintaining, furnishing, fixturing and equipping the convention center; 3) costs associated with the development of the convention center, including, but not limited to, design, engineering and feasibility costs; 4) costs associated with the operation and management of the convention center; 5) costs associated with promoting, marketing and otherwise encouraging use of the convention center; and 6) general purposes of the convention center. Phila.Code § 19–2404(2).

The Appellant is the owner/operator of the Guest Quarters Suite Hotel, previously known as the Embassy Suites Hotel, located near the Philadelphia International Airport, approximately seven miles from the convention center, and approximately twenty minutes by motor vehicle from the downtown area of the City of Philadelphia commonly referred to as Center City. Although the Appellant has complied and continues to comply with the mandates of the Tax, on June 8, 1987, Appellant filed a complaint against the Appellees seeking a declaratory judgment stating that the Tax and the Act are unenforceable as applied to the Partnership and that the portion of the Tax which supports a proposed convention center is void on its face. The trial court found that the Act and the Tax do not violate the Uniformity Clause of the Pennsylvania Constitution nor the Due Process and Equal Protection Clauses of the United States Constitution, and that neither constitutes special laws prohibited by Article III, Section 32 of the Pennsylva-

nia Constitution. The trial court further found that this Court's decision in *Allegheny County v. Monzo, supra,* is distinguishable from the present challenge. We agree.

 The principles which govern analysis of the claims asserted here are well established. First, and foremost, is a presumption that tax enactments are constitutionally valid and the burden of proving invalidity is upon the person challenging the tax (citations omitted). *Monzo,* 509 Pa. at 36, 500 A.2d at 1101. The Legislature, in the exercise of its taxing power, is subject to the requirements of the equal protection and uniformity clauses. *Alco Parking Corp. v. City of Pittsburgh,* 453 Pa. 245, 307 A.2d 851, *rev'd on other grounds,* 417 U.S. 369, 94 S.Ct. 2291, 41 L.Ed.2d 132 (1974). However, the Legislature possesses wide discretion in matters of taxation. *Aldine Apartments v. Commonwealth,* 493 Pa. 480, 426 A.2d 1118 (1981).

 So far as the reasonableness of classifications made for the purposes of taxation is concerned, the Uniformity Clause of the Constitution of Pennsylvania and the Equal Protection Clause of the Constitution of the United States stand in *pari materia. Commonwealth v. Life Assurance Co. of Pa.,* 419 Pa. 370, 214 A.2d 209 (1965). Both the federal equal protection clause, as applied to taxing statutes, and the state constitutional requirement of uniformity of taxation "upon the same class of subjects" (Pa. Const. Art. VIII, § 1) mandate that classification in a taxing scheme have a rational basis. In either case, a classification for tax purposes is valid when it "is based upon some legitimate distinction between the classes that provides a non-arbitrary and 'reasonable and just' basis for the different treatment." *Leonard v. Thornburgh,* 507 Pa. 317, 321, 489 A.2d 1349, 1350 (1985), quoting *Aldine Apartments v. Commonwealth, supra.* Where there exists no legitimate distinction between the classes, and thus, the tax scheme imposes substantially unequal tax burdens upon persons otherwise similarly situated, the tax is unconstitutional. *Commonwealth v. Staley,* 476 Pa. 171, 180, 381 A.2d 1280, 1284 (1978). The controlling standard for deter-

mining whether a tax is violative of the Due Process Clause of the Fourteenth Amendment is "... whether the taxing power exerted by the state bears a fiscal relation to protection, opportunities and benefits given by the state. The simple question is whether the state has given *anything* for which it can ask a return." *Monzo,* 509 Pa. at 38, 500 A.2d at 1102, quoting *Wisconsin v. J.C. Penney Co.,* 311 U.S. 435, 444, 61 S.Ct. 246, 249, 85 L.Ed. 267 (1940) (emphasis added by *Monzo* ). Where the benefit received and the burden imposed is palpably disproportionate, a tax is not only a taking without due process under the Fourteenth Amendment to the United States Constitution, but also an arbitrary form of classification in violation of equal protection and state uniformity standards. *Thomas v. Kansas City So. Ry.,* 261 U.S. 481, 43 S.Ct. 440, 67 L.Ed. 758 (1923).

■ A taxing statute is subject to the same "rational relationship test" under the special laws provisions of the Pennsylvania Constitution, Art. 3, § 32, as under the equal protection clause. Legislation for a class is not an impermissible special law where the legislative classification "is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones." *Freezer Storage, Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 275, 382 A.2d 715, 718 (1978) (quoting *Du Four v. Maize,* 358 Pa. 309, 313, 56 A.2d 675, 677 (1948)). *See also, Tosto v. Pennsylvania Nursing Home Loan Agency,* 460 Pa. 1, 14, 331 A.2d 198, 204 (1975) (special laws provision "requires only that a classification must have some rational relationship to a proper state purpose").

■ Applying these principles to the instant case, we find that the taxing scheme meets constitutional requirements and that our decision in *Monzo, supra,* is not applicable to the facts present in this case. In *Monzo,* we held that a tax violates the equal protection, due process and uniformity clauses if "the benefit received and the burden imposed is palpably disproportionate." 509 Pa. at 38, 500 A.2d at 1102. The hotel tax in *Monzo* failed this test because "a substantial portion (perhaps a majority) of the class taxed are

afforded no benefits whatsoever, while being significantly burdened." *Id.*, 509 Pa. at 42, 500 A.2d at 1104. The *Monzo* decision was based on unique facts not present in the instant case.

*Monzo* involved a challenge, based on the same constitutional principles invoked by the Appellant here to a hotel occupancy tax imposed upon all hotels located in Allegheny County, for the sole purpose of financing a convention center to be constructed in downtown Pittsburgh. The challenger, *Monzo*, was the operator of a hotel located in an outlying municipality near the Allegheny County line, and fifteen miles from downtown Pittsburgh. The tax at issue was an Allegheny County hotel occupancy tax ordinance enacted pursuant to the Hotel Room Rental Tax Statute of 1977,[5] which authorized second class counties to impose a one percent (1%) hotel room rental tax, the revenues of which were to be deposited in a special fund "established solely for purposes of a convention center or exhibition hall." 16 Pa.S. § 4970.2(c). Allegheny County is the only second class county in the Commonwealth and, due to the limited duration of the statute, there was no possibility that any other county would achieve second class status before the termination date of December 31, 1983. The record in *Monzo* established several uncontroverted facts which were critical to that decision and which are not present in the instant case.

There was evidence that the Allegheny County tax and the convention center harmed Monzo's business by taking patrons away from his hotel and drawing them to downtown hotels near the convention center. There was also evidence that his hotel received no benefit as a result of the new Pittsburgh convention center. The effect of the tax was to require Monzo to subsidize his downtown competition in exchange for no observable benefit. Further, Monzo was able to show that because the tax increased the cost of an Allegheny County room, he lost business to competing hotels in Westmoreland County. In addition, officials of the

5. Act of December 16, 1977, P.L. 323, No. 94, § 1, 16 Pa.S. § 4970.2.

Allegheny County Authority and the Pittsburgh Convention and Visitors Bureau testified that the convention center would only benefit hotels and other businesses in downtown Pittsburgh. They also testified that distance from the convention center was a critical factor and the further a hotel was from the center of Pittsburgh the less convention business it could expect. There was no proof of any kind— either legislative findings or factual evidence—that the Pittsburgh Convention Center would benefit the county. Moreover, the Allegheny County tax was levied upon all hotels in Allegheny County which encompasses several municipalities surrounding the City of Pittsburgh, in contrast to Philadelphia where the City and County are one and the same.

The record before this Court in the instant case presents a quite different factual situation. In short, each of the critical factors upon which we relied in reaching the result in *Monzo* are absent here.

In support of the contention that the Philadelphia Act and Tax are unconstitutional, Appellant asserts that any benefit the Partnership may receive from the proposed convention center is palpably disproportionate to the burden imposed; and that the Tax treats similar kinds of business differently in that a portion of the class that are affected by the tax are afforded no benefits whatsoever while being significantly burdened. These are virtually the same claims as were raised in *Monzo*. However, in contrast to *Monzo*, neither the facts upon which the claims are based, nor the evidence presented at trial here support these claims. Appellant has failed to provide any evidence that the Tax or the new convention center will cause actual harm to the Partnership business. The evidence of record shows that even Appellant's expert concedes that Appellant receives some benefit in the form of some convention business and displaced commercial demand. (Laventhol Report, App. 7a, 20a.) Appellant has also failed to show that the taxing scheme imposes unequal tax burdens upon persons otherwise similarly situated. *Commonwealth v. Staley, supra,* 476 Pa.

at 180, 381 A.2d at 1284. All hotels subject to the Tax are located in the City of Philadelphia and all stand to benefit from the proposed convention center.

It is within the province of the trial judge, sitting without a jury, to judge the credibility of the witnesses and to weigh their testimony. On appeal, it is not the duty of the appellate court to find the facts, but to determine whether there is evidence in the record to justify the trial court's findings of fact. *Lawner v. Engelbach*, 433 Pa. 311, 249 A.2d 295 (1969). This Court is bound by the trial judge's findings unless those findings are not based on competent evidence. *2401 Penn. Ave. v. Fed. of Jewish Agencies*, 507 Pa. 166, 489 A.2d 733 (1985). While Appellant claims that the Tax reduces its revenues and that the Tax has discouraged it from raising its rates, the trial court found that there was no evidence to substantiate these claims. The trial court further found that Appellant "failed to prove that the three percent (3%) differential (resulting from the Tax) between its rates and the rates of its airport area competitors affects its business. Given Plaintiff's high occupancy rate, the Tax cannot be said to have resulted in an actual loss of business." *Leventhal v. The City of Philadelphia*, June Term, 1987, No. 1849 (slip opinion at 11). The trial court also noted that this was in stark contrast to *Monzo*, where there was evidence that *Monzo's* hotel had lost considerable business because of that tax and the Pittsburgh Convention Center.

Appellant has not only failed to prove any actual harm from the Tax, but has also failed to support its claim that it will not benefit from the new convention center. While conceding that the center will increase the demand for hotel rooms in Philadelphia, Appellant argues that individuals attending conventions will stay at center city hotels within walking distance of the Convention Center. Thus, claims Appellant, the Partnership will not benefit from this increased demand.

Both the report submitted by Appellees' expert, Pannell Kerr Forster, and the accompanying affidavit of Thomas

Muldoon, President of the Philadelphia Convention and Visitors Bureau, support the trial court's findings that because of overflow convention demand[6] and displaced hotel room demand,[7] hotels throughout Philadelphia will benefit from the increased demand generated by the new convention center. "Hotels located in the airport area are particularly likely to benefit from increased room demand generated by the new Convention Center because of that market's location at the transportation gateway to the city, and because of the Airport High Speed Line." (Pannell Report, App. 37a; Muldoon Affidavit, App. 99a). This evidence of benefit to Appellant and to other Philadelphia hotels not located

6. The trial court made the following findings based on the Pannell Report with regard to overflow convention demand:

(14) The new Convention Center will generate increased convention attendance in Philadelphia. For the 1992 to 1996 period, projected average yearly attendance at the new Convention Center is estimated to be 227,000. For the 1994 to 1996 period, projected average yearly attendance at the new Convention Center is estimated to be 265,633. The projected convention attendance for 1996 is 276,100 (Pannell Report, App. 30a).

(15) Convention attendance at the Civic Center for 1987 was approximately 91,000. Average annual attendance for the 1983 to 1987 period was 80,831 (Pannell Report, App. 30a).

(16) The center city hotel market will respond to the increase in room demand by adding 3,696 hotel rooms between year-end 1986 and 1996. These additions will provide the center city market with 9,163 hotel rooms by 1996 (Pannell Report, App. 32a–33a, 35a).

(17) Despite these increases, center city hotels will be unable to absorb all of the increased hotel room demand generated by the new Convention Center (Pannell Report, App. 35a–36a). The overflow demand that will not be accommodated by center city hotels is estimated to average 24,200 room-nights annually from 1992 to 1996 (Pannell Report, App. 25a). A room-night is one room for one night (Pannell Report, App. 44a).

(18) For the 1992 to 1996 period, the projected *average* yearly vacancy rates for center city hotels range from 28 percent to 31 percent. Center city hotels are projected to be filled to capacity during large conventions during this same period. (Pannell Report, App. 31a, 35a–36a).

* * * * * *

7. Displaced demand will occur when a large convention uses all or most of the hotel rooms in a lodging market which forces non-convention-related travelers to seek accommodations in another lodging market; for example, from center city to the airport (Pannell Report, App. 24a).

in center city present yet another distinction between this case and the *Monzo* case. In *Monzo*, the evidence showed that Monzo would receive no convention business. Another critical difference between this case and *Monzo* is that here the Tax applies only to hotels in Philadelphia, whereas in *Monzo*, hotels in municipalities outside of Pittsburgh, but within Allegheny County, were subject to the tax. The record here clearly establishes that the Partnership will benefit from the proposed convention center, and that the burden imposed upon Appellant by the Tax is not palpably disproportionate to the benefit received. Nor do the Act and the Tax violate the Uniformity Clause of the Pennsylvania Constitution or the Equal Protection and Due Process Clauses of the United States Constitution. Under the previously enumerated applicable legal standards, the Act represents an appropriate exercise of the Legislature's power to enact taxes directed towards a legitimate public goal.

Finally, also in contrast to *Monzo*, the Act here does not violate the Special Law Clause of the Pennsylvania Constitution, Art. 3, § 32. The drafters of the Act were aware of *Monzo* when they drafted this legislation. *See*, Legislative Journal—Senate 1706, 1712 (daily ed. March 10, 1986); Legislative Journal—House 398 (daily ed. March 11, 1986). The General Assembly spent numerous hours debating the merits of building a convention center in Philadelphia, and whether the project would generate sufficient jobs and revenues to justify the expenditure of state funds. The Legislature made specific findings that: (a) the general welfare of this Commonwealth is dependent upon the continual encouragement, development, growth and expansion of business, commerce and tourism within the Commonwealth; (b) the development of a major convention center is most appropriate in a city of the first class; (c) the purpose of such a center should be the promotion of business and tourism in such a city; and (d) the development of such a convention center will provide benefits to the hotel industry throughout the entire area of such a city where such a

center is developed. 53 Pa.S. § 16202.[8]

These legislative findings are given great weight by this Court, and the findings are supported by the evidence presented at trial, that all hotels in Philadelphia will benefit from the convention center. In contrast to *Monzo*, the Philadelphia Convention Center is not a special purpose project from which only a small group will benefit, rather it will benefit all of Philadelphia. Further, in *Monzo*, all hotels in every. city, borough and township in· Allegheny County were taxed to support a Convention Center ·for the City of Pittsburgh, which is only one of 127 municipalities in the County of Allegheny, while here only hotels in Philadelphia are taxed to support the Philadelphia Convention Center.

There was evidence presented that smaller counties lack many features necessary to attract major conventions (Pannell Report, App. 103a–350a). Meeting planners of the major conventions and trade shows seek major city locations for their events for several reasons, including prestige, convenience to major transportation and communication facilities, and availability of cultural, shopping, dining, and entertainment attractions. (Muldoon Affidavit, App. 98a). The record clearly demonstrates that the restriction of the Act to first class cities was a proper and rational exercise of legislative judgment.

The instant Tax can be distinguished from the Allegheny County tax in yet another. way. The Tax does not automatically expire after any period of time, but is of unlimited duration. It provides for a lower rate of tax if construction of a convention center is not commenced by December 31, 1988. This leaves open the possibility that other localities might become qualified during the operative period of the statute. The Legislature in the instant case has thus corrected the infirmity of the Allegheny County tax.

Accordingly, since we found no constitutional infirmity in either the Tax, or its enabling Act, the January 22nd order

8. The legislative findings and declaration of policy are contained in 53 Pa.S. § 16202.

affirming the Order of the Court of Common Pleas of Philadelphia County was entered.