638 A.2d 344

**LEE HOSPITAL, Appellant,**

v.

**CAMBRIA COUNTY BOARD OF ASSESSMENT APPEALS,** Cambria County Board of Commissioners, Kathy Lehman Holtzman, Mark J. Wissinger and Ted Baranik and City of Johnstown and School District of Johnstown.

Commonwealth Court of Pennsylvania.

Argued June 15, 1993.

Decided Feb. 8, 1994.

40

Seymour J. Schafer, for appellant.

Calvin John Webb, II, for appellees.

Bryan E. Barbin, for intervenors City of Johnstown and School Dist. of Johnstown.

Before COLINS and KELLEY, JJ., and LORD, Senior Judge.

KELLEY, Judge.

Lee Hospital (Lee) appeals from an order of the Court of Common Pleas of Cambria County (trial court) which granted the preliminary objections of the Cambria County Board of Assessment Appeals (board), the Cambria County Board of Commissioners (Commissioners), Kathy Lehman Holtzman, Mark J. Wissenger, Ted Baranik and the City of Johnstown and School District of Johnstown (jointly referred to as the Intervenors) and dismissing Lee's complaint for injunctive and declaratory relief. We affirm.

The Cambria County Board of Commissioners is a three-member, elected, administrative governmental body, created pursuant to section 401 of the County Code (Code).[1] Under

1. Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. § 401.

the mandate of section 1701 of the Code, the Commissioners are the "responsible managers and administrators of the fiscal affairs" of the county in accordance with the provisions of the Code and other applicable law. Holtzman, Wissinger and Baranik are the Commissioners.

The board is a three-member governmental agency created pursuant to section 301 of the Fourth to Eighth Class County Assessment Law (Law).[2] Holtzman, Wissinger and Baranik are also the members of the board.[3]

Lee is a health care provider which operates an acute care hospital in Johnstown, Cambria County. Three other hospitals are located within Cambria County: Conemaugh Valley Memorial Hospital (Conemaugh), Mercy Medical Center of Johnstown (Mercy) and Miners Hospital of Northern Cambria (Miners) (referred to collectively as the hospitals). Through tax year 1991, the real property of Lee, as well as that of the hospitals, was determined to be exempt from local real estate taxation on the basis of the hospitals' charitable function as set forth by section 202(a)(3) of the Law.[4]

On January 9, 1992, this court, in an en banc decision in *School District v. Hamot Medical Center*, 144 Pa.Commonwealth Ct. 668, 602 A.2d 407 (1992), clarified the requirements

**2.** Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. § 5453.301. Cambria County is a county of the fourth class.

**3.** Under Section 301 of the Law, the board of assessment appeals in counties of the fourth to eighth class may be composed of the three county commissioners. 72 P.S. § 5453.301.

**4.** Section 202(a)(3), 72 P.S. § 5453.202(a)(3), provides in relevant part:

**Section 202. Exemptions from taxation**
 (a) The following property shall be exempt from all county, borough, town, township, road, poor, county institution district and school (except in cities) tax, to wit:
 . . . .
 (3) *All hospitals*, universities, colleges, seminaries, academies, associations and institutions of learning, ... with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose: ... (Emphasis added.)

for non-profit hospitals to qualify for charitable exemption from taxation. Subsequently, on February 6, 1992, the Commissioners unanimously voted to establish a committee to review the area hospitals' exempt status in light of the *Hamot* decision and to determine whether negotiated payments "in lieu of taxes" were appropriate. Payments would be made in exchange for agreements by the taxing authorities not to challenge the individual tax exempt status of the hospitals.

The county's chief assessor requested information from Lee relevant to the determination of Lee's tax exempt status. No such information was provided.

On May 13, 1992, the committee submitted a report to the Commissioners which recommended that Lee, Mercy, Conemaugh and Miner be placed on the tax rolls as a result of the *Hamot* decision. Having failed to negotiate agreements with the four hospitals, the committee advised the Commissioners on June 5, 1992 of its unanimous decision that all four of the hospitals should be placed on the tax rolls. On June 11, 1992, the Commissioners unanimously passed a resolution directing that Lee, Mercy, Conemaugh and Miner be placed on the tax rolls.

On July 2, 1992, the Commissioners tabled a resolution which would have required the chief assessor to place the four hospitals on the tax rolls. Subsequently, Conemaugh and Miners both entered into agreements in lieu of taxation and their properties were placed on the list of tax exempt properties.

Pursuant to its authority, the board approved the placement of Conemaugh and Miners on the list of tax exempt properties. The board announced at its July 14, 1992 meeting that Lee and Mercy were not entitled to retain their exempt status from local taxation, and their properties would be placed on the tax roll. On July 15, 1992, the Commissioners notified Lee and Mercy that their properties were classified as taxable.

On August 24, 1992, Lee filed with the board a statement of intention to appeal Lee's tax designation. The board notified Lee that the appeal would be heard on October 26, 1992. In

the interim, on October 13, 1992, Lee concurrently filed a complaint for injunctive and declaratory relief and a petition for preliminary injunction with the trial court.

The complaint alleged (1) a violation of Lee's due process right; (2) a violation of Lee's equal protection right; and (3) a violation of Lee's right to uniformity of treatment under the Uniformity Clause of the Pennsylvania Constitution. The complaint sought relief, *inter alia,* in the form of (1) a declaration that the statutory remedy provided by the Law is violative of Lee's constitutional rights as a result of the board's involvement, and is therefore unenforceable; (2) a declaration that Lee has been treated disparately from similarly situated property owners; and (3) a declaration that Lee has not been treated uniformly or in the same manner as the class of subjects to which Lee and its properties belong.

Lee's petition sought to enjoin the board from taking any further action on the appeal until the trial court had passed on the merits of the complaint.

The board, Commissioners and Intervenors filed preliminary objections averring that (1) Lee did not state a claim upon which it is entitled to relief; (2) the lower court lacked equity jurisdiction because Lee had an adequate statutory remedy; and (3) Lee was required to exhaust its statutory remedies through a pending proceeding before the board.

On October 22, 1992, following oral argument, the trial court entered an order granting the preliminary objections and dismissing Lee's complaint. Lee appeals from this determination.

On appeal, Lee presents the following arguments for our consideration: (1) Lee's right to due process was violated by requiring Lee to pursue the statutory remedy provided in the Law, for an appellate review before the board whose members were in a dual statutory capacity made the initial decision; (2) Lee's right to due process was violated by requiring Lee to pursue an appellate review before the board when previously its members allegedly acted in a biased manner against Lee; (3) Lee's right to equal protection was violated when the board

treated Lee disparately from similarly situated property own-
ers; (4) the board violated the Uniformity Clause of the
Pennsylvania Constitution by failing to treat Lee uniformly or
in the same manner as other similarly situated property
owners; and (5) the trial court erred in concluding it lacked
equity jurisdiction because of the availability of a statutory
remedy because the legal challenge was that the remedy itself
does not meet the requirements of due process.

## 1. Due Process

■ As recognized by our Supreme Court, the elements of
procedural due process include adequate notice, an opportuni-
ty to be heard, and the opportunity to defend oneself before a
fair and impartial tribunal having jurisdiction over the matter.
*Lyness v. State Board of Medicine,* 529 Pa. 535, 605 A.2d 1204
(1992).

■ The board is a governmental body created pursuant to
section 301 of the Law. As a municipal governing body, the
board must afford all parties before it the required guarantees
of due process.

Lee suggests possible due process violations arising from
the dual function of Holtzman, Wissenger and Baranik as
members both of the Commissioners and the board. For Lee
to pursue the appellate remedy set forth in the Law, the
argument postulates, Lee would be required to seek review
before an impartial tribunal composed of the same members
as the Commissioners which already has evidenced its view of
Lee's tax status and which has a strong financial interest in
raising additional revenue for the county.

Pursuant to section 301 of the Law, the board is composed
of the three Commissioners or, in the alternative, three mem-
bers appointed by the Commissioners. Section 301 provides
in totality:

**Section 301. Board membership**

In each county there is hereby created a "Board of
Assessment Appeals," hereinafter referred to as the board.
Except as hereinafter provided in this section for appoint-

ment of members, *the board shall be composed of the three county commissioners in each county.* In each county of the fourth, fifth, sixth, seventh or eighth class the county commissioners *may* appoint a board consisting of three members to serve for terms which shall expire concurrently with the terms of the county commissioners making the appointment. No more than two such appointed members shall be members of the same political party. Vacancies happening in such office in any county of the fourth, fifth, sixth, seventh or eighth class shall be filled by appointment by the county commissioners for the unexpired terms. The salary of the members of the board in any county of the fourth, fifth, sixth, seventh or eighth class shall be fixed by the salary board of the county. (Emphasis added.)

72 P.S. § 5453.301.

Further applicable is section 302[5] which sets forth the authority of the board, providing in pertinent part:

**Section 302. Board, powers and duties; limitations**

(a) The board shall have the power, and it shall be its duty, to

(1) *Appoint* as hereinafter provided *a chief county assessor* and such assistant assessors, clerks and other employees as may be deemed necessary.

(2) *Adopt rules and regulations* not inconsistent with this act, *which shall govern the chief assessor,* his assistants and local elected assessors *in the making of the assessment.*

(3) *Hear and determine appeals,* as hereinafter provided, *from the valuations fixed by the assessor,* or revised by the board as the case may be.

(4) *Establish,* within the limits of this act, *the form of the assessment roll and the order of listing of persons and property in such assessment roll* and in the tax duplicates prepared from such roll.

. . . .

5. 72 P.S. § 5453.302.

(6) Examine and revise the assessments and valuations as hereinafter provided.

(Emphasis added.)

The role and duties of the chief assessor relevant to the instant matter are set forth in sections 403 and 601[6] as follows:

**Section 403. Duties of chief assessor**

It shall be the duty of the chief assessor to:

(1) Advise the board in the preparation of the rules and regulations as provided by this act;

. . . .

(3) Prepare an assessment roll in the form prescribed by the board;

**Section 601. Preparation of assessment rolls**

Annually, on or before the first day of July, the chief assessor shall, from the returns made by the local assessors, prepare and submit to the board, in the form prescribed by the board, an assessment roll or list of persons and property subject to local taxation, together with the actual value placed upon each person, each parcel or tract of real property and the personal property of each person by the assessor, and shall make and have supervision of listing and valuation of property excluded or exempted from taxation. The chief assessor shall, at the same time, prepare and submit a list of all property exempted by law from taxation. . . .

The board and chief assessor precisely followed the above statutory scheme when conducting the assessment of the tax status of Lee and the other hospitals. The board was properly composed of the three county Commissioners as permitted by section 301. Faithful to the provisions of section 302(a), the board appointed a chief assessor and charged him in the instant matter with evaluating the tax exempt status of the four subject hospitals. Likewise, the board established the rules which governed the chief assessor in the making of the assessment and established the form of the assessment roll.

6. 72 P.S. §§ 5453.403, 5453.601.

The chief assessor timely prepared the assessment roll which subjected Lee to local taxation in accordance with sections 403 and 601.

Most importantly, however, the Law provided for an appellate review of Lee's assessment to the board, which right Lee exercised by appealing its assessment pursuant to section 701(b) of the Law [7], which pertinently states:

### Section 701. Appeal notices

. . . .

(b) Any person aggrieved by any assessment whether or not the value thereof shall have been changed since the preceding annual assessment, or any taxing district having an interest therein, *may appeal to the board for relief.* . . .

(Emphasis added.)

Despite the board's strict adherence to the statutory guidelines, and pending the available appellate review by the board, Lee now asserts that the appellate procedure it is required to follow violates its due process rights and seeks to enjoin review by the board.

■ The United States Supreme Court has held that a due process violation occurs where an individual governmental official carries out dual roles with respect to the administration of fiscal affairs. Specifically, due process violations occur when the official carrying out an adjudicative function holds a direct, personal, substantial, pecuniary interest in the outcome of the proceeding. *Aetna Life Insurance v. Lavoie*, 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986), *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927).

In both *Ward* and *Tumey*, mayors had the responsibility for both revenue production and law enforcement and, in *Ward*, the mayor personally received a portion of the fees and costs he assessed against violators of certain local ordinances. The courts held that it was a violation of due process for a mayor

7. 72 P.S. § 5453.701(b).

to directly depend on convictions he controlled for additional personal compensation or public revenues. However, the *Ward* court made clear that when the government official's relationship to the finances and financial policies of the municipality are too remote to presume a bias, there can be no finding of unconstitutional partiality. *Ward*, 409 U.S. at 60–61, 93 S.Ct. at 83–84 (citing *Dugan v. Ohio*, 277 U.S. 61, 48 S.Ct. 439, 72 L.Ed. 784 (1928)).

Holtzman, Wissenger and Baranik in the present case, unlike the mayors in *Ward* and *Tumey*, possess no direct pecuniary interest in the revenues realized by the local tax assessments, nor are their salaries dependent on such income. While the Commissioners are responsible for management of the county's finances, as well as the prospective financial policy, these elected members do so on behalf of the county citizenry. The interests of the Commissioners are the interests of the public; no direct, personal monetary benefit may result from the actions of the Commissioners or board in assessing Lee's property.

Further, neither the Commissioners nor the board directly assessed Lee's property, but rather in accordance with the statutory scheme, authorized an examination of the tax exempt status of the four subject hospitals by the chief assessor. Moreover, the Commissioners tabled a resolution that would have *required* the chief assessor to place Lee and the other hospitals on the tax roll.

Lee relies heavily on our Supreme Court's analysis of a commingling of governmental functions in *Lyness*, 529 Pa. 535, 605 A.2d 1204 (1992). The Supreme Court held that the due process provisions of the Pennsylvania Constitution were violated when a single body makes both the decision to bring disciplinary proceedings and, thereafter, adjudicates the same proceedings. Specifically, the court held that the State Board of Medicine violated a physician's right to pursue a livelihood or practice his profession because an administrative board cannot initiate a professional licensing prosecution, and then act as the ultimate fact finder in determining whether a

violation has occurred. In the proceedings, three of the seven members of the board who determined that the physician should be prosecuted also participated in the deliberations which ultimately imposed the sanctions. The court noted that even an *appearance* of bias and partiality must be viewed with suspicion:

> In determining what process is due Pennsylvania citizens, this Court has established a clear path when it comes to commingling prosecutorial and adjudicatory functions. There is a strong notion under the Pennsylvania law that even an *appearance* of bias and partiality must be viewed with deep skepticism....

*Id.,* 529 Pa. at 542, 605 A.2d at 1207 (emphasis in original). The court continued:

> Whether or not any actual bias existed as a result of the Board acting as both prosecutor and judge is inconsequential; the potential for bias and the appearance of non-objectivity is sufficient to create a fatal defect under the Pennsylvania Constitution.

*Id.,* 529 Pa. at 548, 605 A.2d at 1210.

Here, there is not the same commingling of governmental functions as is contemplated in *Lyness.* To so analogize, we would be required to assign to the Commissioners a prosecutorial function it does not now enjoy, as well as consider the board the ultimate fact finder/adjudicator. In contrast, what the Law *does* provide is for the board to charge the chief assessor with determining what properties warrant assessment for each tax year. Later, if necessary, an interested property owner may appeal such assessment to the board for review. This scheme does not describe a commingling of prosecutorial and adjudicative functions which would sound the skeptical alarm of bias.

Therefore, we find no appearance of bias in the case *sub judice.* The dual statutory function of the Commissioners and the board is fully contemplated by the Law and adequately executed by the members in their dual roles. Therefore, we find that the appellate remedy provided by the Law for review

of tax status before the board is protective of Lee's due process rights when the members of the board are also the members of the County Board of Commissioners. Consequently, Lee's rights are not violated by requiring it to pursue the statutory remedy provided by the Law.

## 2. Uniformity Clause and Equal Protection

Lee next argues that its right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution (the Equal Protection Clause)[8] and its right to uniform treatment under the Uniformity Clause of the Pennsylvania Constitution[9] were violated when the chief assessor classified all of Lee's properties as taxable, while that of Conemaugh and Miners were considered exempt because the latter two entered into agreements in lieu of taxation.

Our Supreme Court, in *Leventhal v. City of Philadelphia*, 518 Pa. 233, 542 A.2d 1328 (1988), discussed the principles governing tax cases when equal protection and uniformity arguments are presented:

So far as the reasonableness of classifications made for the purposes of taxation is concerned, the Uniformity Clause of the Constitution of Pennsylvania and the Equal Protection Clause stand in *pari materia. Commonwealth v. Life Assurance Co. of Pa.*, 419 Pa. 370, 214 A.2d 209 (1965). Both the federal equal protection clause, as applied to taxing statutes, and the state constitutional requirement of uniformity of taxation "upon the same class of subjects" (Pa. Const. Art. VIII, § 1) mandate that classification in a taxing scheme have a rational basis. In either case, a classification for tax purposes is valid when it "is based upon some legitimate distinction between the classes that provides a

8. The Fourteenth Amendment of the United States Constitution provides:

No State shall ... deny to any person within its jurisdiction the equal protection of the laws.

9. The Uniformity Clause, Pa. Const. article VIII, § 1, provides in relevant part:

All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax....

non-arbitrary and 'reasonable and just' basis for the different treatment." *Leonard v. Thornburgh*, 507 Pa. 317, 321, 489 A.2d 1349, 1350 (1985), quoting *Aldine Apartments v. Commonwealth*, [*of Pennsylvania*, 493 Pa. 480, 426 A.2d 1118 (1981)] *supra*. Where there exists no legitimate distinction between the classes, and thus, the tax scheme imposes substantially unequal tax burdens upon persons otherwise similarly situated, the tax is unconstitutional. *Commonwealth v. Staley*, 476 Pa. 171, 180, 381 A.2d 1280, 1284 (1978).

*Leventhal*, 518 Pa. at 239, 542 A.2d at 1331.

 Under the Uniformity Clause, a tax must be applied with uniformity upon similar kinds of businesses or property and with substantial equality of the tax burden upon all members of the same class. *Bensalem Township School District v. Bucks County Commissioners*, 8 Pa.Commonwealth Ct. 411, 303 A.2d 258 (1973). A taxpayer who alleges a violation of the Uniformity Clause must show either that there is deliberate discrimination in the application of the tax or that the tax has a discriminatory effect. *City of Lancaster v. Lancaster County*, 143 Pa.Commonwealth Ct. 476, 599 A.2d 289 (1991), *petition for allowance of appeal denied*, 530 Pa. 634, 606 A.2d 903 (1992).

 Under the Uniformity Clause and the Equal Protection Clause, absolute equality and perfect uniformity in taxation are not required. *Kalodner v. Commonwealth*, 150 Pa.Commonwealth Ct. 248, 615 A.2d 900 (1992). The Uniformity Clause and the Equal Protection Clause do not impose an ironclad rule of equality so as to inhibit flexible and reasonable schemes of taxation; only substantial uniformity and approximate equality are required. *Commonwealth v. Rohm and Haas Co.*, 28 Pa.Commonwealth Ct. 430, 368 A.2d 909 (1977), *affirmed* 478 Pa. 164, 386 A.2d 491, *appeal dismissed*, 439 U.S. 805, 99 S.Ct. 61, 58 L.Ed.2d 97.

 Here, the Commissioners decided to re-evaluate the tax exempt status of the four subject hospitals under the new light of the *Hamot* precedent. Consequently, the Commis-

sioners presented to each of the hospitals an equal opportunity to enter into an acceptable resolution of the tax exempt dispute, and avoid litigation.[10] All four hospitals participated in the negotiation of the agreements in lieu of taxes, but by their own accord, Lee and Mercy chose to not enter into agreements. As a result, the real property of Lee was placed on the tax roll by the chief assessor.

Lee was treated identically and fairly *vis-a-vis* the other similarly situated institutions. The result of the treatment is that all four hospitals are now taxed, either by lump-sum settlement, or through the normal taxing channels.

We find an insufficiency of the record that Lee was added to the tax rolls as the result of a deliberate, purposeful discrimination. Presently, there is no inequity in the tax assessment upon Lee in relation to the assessment or payment of other hospitals.[11] Lee cannot support an argument that its equal protection right and its right to uniform tax treatment was violated when it had every opportunity afforded the other members of its class.

### 3. Equity Jurisdiction.

Finally, we address the trial court's dismissal of Lee's complaint in equity based on its conclusion that Lee failed to meet the requirements for equity jurisdiction to apply. Lee argues that equity has jurisdiction because of the unavailability of an adequate statutory remedy in that Lee's challenge is that the statutory remedy itself does not meet the mandate of due process.

10. Appellees' brief characterizes the agreements in lieu of taxes as a "resolution of the tax exempt litigation, pending enactment of appropriate legislation." The proposed legislation would require the hospitals to pay an undetermined amount of tax. If the legislation required a payment in excess of the agreed upon amount, the hospitals would have a debit for this amount. Conversely, if the legislated amount was below the amount agreed to in the resolution, the hospitals would realize a credit. (Appellees' brief, pp. 8–9).

11. The record does not reveal the amounts of payment agreed to by Conemaugh or Miners, or the assessed valuation of the real property of Lee or Mercy.

■ In order for a court to exercise equity jurisdiction in cases involving the imposition of a tax, the plaintiff must raise a substantial question of constitutionality *and* the plaintiff must lack an adequate statutory remedy. *Consolidated Gas Supply Co. v. County of Clinton,* 80 Pa.Commonwealth Ct. 10, 470 A.2d 1113 (1984); *Lillian v. Commonwealth,* 11 Pa.Commonwealth Ct. 90, 311 A.2d 368 (1973).

■ We have concluded that a constitutionally adequate statutory remedy does exist in the form of an appeal to the board as proscribed by the Law. Further, in the event of an unfavorable review at the board level, section 704 of the Law [12] provides for an appeal to the court of common pleas.[13] Given such remedies, as yet unexhausted, Lee cannot be afforded the opportunity to circumvent the statutory process, the inadequacy of which Lee has failed to demonstrate.

Accordingly, we affirm the order of the trial court which dismissed Lee's complaint for injunctive and declaratory relief and granted appellees' preliminary objections.

## ORDER

NOW, this 8th day of February, 1994, the order of the Court of Common Pleas of Cambria County, at No. 1992–2846, is hereby affirmed.

---

12. 72 P.S. § 5453.704(a).

13. Section 704 provides, in pertinent part:

(a) Any person who shall have appealed to the board for relief from any assessment, who may feel aggrieved by the order of the board in relation to such assessment, may appeal from the order of the board to the court. . . .