**BOLD CORP., as Trustee for Masspa Realty Trust, t/d/b/a Lancaster Host Resort and Conference Center; Inn Management Services, Inc., t/d/b/a Eden Resort Inn and Conference Center; First DFI Partnership, L.P., t/d/b/a The Ramada Inn; Continental Inns of America, Inc. t/d/b/a Continental Inn; Historic Realty, Inc., t/d/b/a Historic Strasburg Inn; Family Time of Hershey Farm, Inc., t/d/b/a Hershey Farm Restaurant & Motor Inn; Dommel's Hotel Management, Inc., t/d/b/a Your Place Country Inn; Kim–Motel**

Corporation, t/d/b/a Quality Inn & Suites; Historic Revere Tavern & Motor Inn, Inc., t/d/b/a Best Western Revere; Pentidattilo Corporation, t/d/b/a Italian Villa Motel; and Ara Motel, Appellants,

v.

**COUNTY OF LANCASTER, City of Lancaster, Lancaster County Convention Center Authority.**

Commonwealth Court of Pennsylvania.

Argued Nov. 7, 2001.

Decided Jan. 23, 2002.

Kathryn Lease Simpson and Christopher C. Conner, Harrisburg, for appellants.

Christopher A. Stump, Lancaster, for appellees.

Before DOYLE, President Judge [1], COLINS, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, KELLEY, Judge [2] and LEADBETTER, Judge.

1. The decision in this case was reached prior to the date that President Judge Doyle assumed the status of senior judge on December 31, 2001.

2. The decision in this case was reached prior to the date that Judge Kelley assumed the status of senior judge on December 31, 2001.

FRIEDMAN, Judge.

Bold Corp., as Trustee for MASSPA Realty Trust, t/d/b/a Lancaster Host Resort and Conference Center; Inn Management Services, Inc., t/d/b/a Eden Resort Inn and Conference Center; First DFI Partnership, L.P., t/d/b/a The Ramada Inn; Continental Inns of America, Inc. t/d/b/a Continental Inn; Historic Realty, Inc., t/d/b/a Historic Strasburg Inn; Family Time of Hershey Farm, Inc., t/d/b/a Hershey Farm Restaurant & Motor Inn; Dommel's Hotel Management, Inc., t/d/b/a Your Place Country Inn; Kim–Motel Corporation, t/d/b/a Quality Inn & Suites; Historic Revere Tavern & Motor Inn, Inc., t/d/b/a Best Western Revere; Pentidattilo Corporation, t/d/b/a Italian Villa Motel; and Ara Motel (collectively, Appellants) appeal from the April 23, 2001 Final Decree of the Court of Common Pleas of Lancaster County (trial court), which dismissed Appellants' exceptions to the trial court's February 2, 2001 Adjudication and Decree Nisi. We vacate and remand.

Appellants are eleven Lancaster County hotels. Pursuant to the 1994 version of the Third Class County Convention Center Authority Act (1994 Act),[3] the City and County of Lancaster acted jointly to create the Lancaster County Convention Center Authority (Authority).[4] At the same time, Lancaster County enacted an ordinance establishing a Hotel Room Rental Tax (Room Tax) of 3.9%, which went into effect on January 1, 2000.[5] The Authority is to use eighty percent of the revenues derived from the Room Tax to fund the development, construction and operation of a convention center in downtown Lancaster.[6] The Pennsylvania Dutch Convention and Visitors Bureau (Visitors Bureau) is to use the remaining twenty percent to promote Lancaster County as a travel destination. (Findings of Fact, Nos. 1, 11–12, 49.)

The Authority contemplates private development of a 294–room first-class hotel that will adjoin the convention center. The hotel will not be built without an adjacent convention center, and the convention center will not be built without an adjoining hotel. The privately financed and privately owned hotel is expected to book 45% of the room nights generated by the convention center. In addition, the adjoining hotel will add 50,000 to 55,000 room nights to the supply of hotel rooms available each year in Lancaster County. Although the first-class hotel might draw a clientele that would not stay overnight in Lancaster County if such a hotel did not exist, the increase in the number of hotel rooms will result in more competition for

---

3. Act of December 27, 1994, P.L. 1375, 16 P.S. §§ 13101–13124, *repealed by* section 4 of the Act of November 3, 1999, P.L. 461. The 1994 Act stated that it "shall not apply to a county which has an existing convention center which covers an area of more than forty thousand square feet." (Findings of Fact, No. 18.) The 1994 Act defined the term "convention center" as a facility "acquired by an authority . . . [and] appropriate for . . . the holding of conventions. . . . ." (Findings of Fact, No. 19.)

4. The City enacted Ordinance No. 5–1999 on September 14, 1999; Lancaster County enacted Ordinance No. 44 on September 15, 1999. (Findings of Fact, No. 11.)

5. Ordinance No. 45 establishes the Room Tax. Lancaster County also enacted Ordinance No. 46 pursuant to section 1770.2 of the County Code, Act of August 9, 1955, P.L. 323, *added by* the Act of June 18, 1997, P.L. 179, *as amended*, 16 P.S. § 1770.2, which establishes a Hotel Excise Tax of 1.1%.

6. The Authority has acquired the necessary land for the proposed convention center at a location near Penn Square in the City of Lancaster. (Findings of Fact, No. 14.) The Authority is operating on the assumption that it will build a three-level convention center with 100,000 to 114,000 square feet of public space. (Findings of Fact, Nos. 26, 28.)

Appellants. (Findings of Fact, Nos. 32, 34–35, 67, 78.)

On March 24, 2000, Appellants filed a Complaint in Equity and Action for Declaratory Judgment (Complaint) against the City of Lancaster, the County of Lancaster and the Authority (collectively, Respondents). In Counts I to IV of their Complaint, Appellants claimed that the Room Tax violates their due process and equal protection rights. In Count V of their Complaint, Appellants averred that the re-enactment of the 1994 Act in 1999 is impermissible special legislation passed solely for the benefit of Lancaster County.[7] (*See* Findings of Fact, No. 21.) In Count VIII of their Complaint, the Host Resort sets forth a federal civil rights action under 42 U.S.C. § 1983, contending that the proposed convention center would diminish the value of and the revenues derived from the Host Resort's convention center.

Respondents filed preliminary objections in the nature of a demurrer to Counts V and VIII of the Complaint. The trial court sustained these preliminary objections and dismissed Counts V and VIII. The case proceeded to a non-jury trial on the constitutional issues presented in Counts I to IV. On February 2, 2001, the trial court issued a Decree Nisi, having concluded that the Room Tax does not violate Appellants' due process or equal protection rights. Appellants filed posttrial motions, which the trial court denied

by order dated April 23, 2001. In the same order, the trial court entered the Decree Nisi as a Final Decree.

On appeal to this court,[8] Appellants argue that the trial court erred in concluding that the Room Tax does not violate their due process and equal protection rights. More specifically, Appellants contend that the trial court did not conduct a proper benefit and burden analysis, failing to consider the adverse impact of the private first-class hotel that will adjoin the convention center. We agree.

■■■ The controlling standard for determining whether a tax violates due process rights is whether it bears a fiscal relation to the protection, opportunities and benefits given in return. *Leventhal v. City of Philadelphia*, 518 Pa. 233, 542 A.2d 1328 (1988). Where the benefit received and the burden imposed is palpably disproportionate, a tax is not only a taking without due process, but also an arbitrary form of classification in violation of equal protection and state uniformity standards. *Id.*

■■ Here, the trial court set forth an analysis of the benefits and burdens associated with the convention center project. In doing so, the trial court stated that, because "the convention center will not exist without the proposed hotel, and *vice-versa*, the hotel will also be considered in the benefit/burden analysis." (Adjudica-

---

**7.** In October 1999, State Senator Gibson Armstrong, whose senatorial district includes the location of the proposed convention center project, sponsored an amendment to House Bill 148 (Armstrong Amendment) to re-enact the 1994 Act and revise the scope section of the statute to state that it "shall not apply to a county which has an existing convention center owned by, leased by or operated by an existing authority or the Commonwealth which covers an area of more than forty thousand square feet." (Findings of Fact, No. 21.) The Governor signed the legis-

lation into law on November 3, 1999. *See* Third Class County Convention Center Authority Act, Act of August 9, 1955, P.L. 323, *added by* the Act of November 3, 1999, P.L. 461, 16 P.S. §§ 2399.1–2399.23 (1999 Act).

**8.** This court's scope of review of a final decree in equity is limited to determining whether the trial court committed an error of law or abused its discretion. *Earl Township v. Reading Broadcasting, Inc.*, 770 A.2d 794 (Pa.Cmwlth.2001).

tion at 26.) However, the trial court's ultimate analysis is as follows:

> While the Court feels that the convention center and adjoining hotel are linked for the purpose of the benefit/burden analysis, to the extent that the hotel absorbs or takes away any benefit that might be created by the proposed center, that is but capitalism at work.....
>
> The Court sympathizes with the plaintiffs to the extent that the market continually requires outselling your competition. However, this is the nature of capitalism and has nothing to do with the imposition of the tax itself. Thus, the extent to which a new hotel will create additional competition for the plaintiffs is irrelevant.....

(Adjudication at 30–31.) In other words, although the trial court acknowledged the necessity of considering the private hotel's impact on Appellants in conducting a benefit and burden analysis, the trial court deemed the increased competition from the hotel to be irrelevant. This does not make sense. Because the additional competition is a burden on Appellants that would not exist without the Room Tax and the convention center, the increased competition most definitely is relevant to the benefit and burden analysis.

In this regard, the trial court found that: (1) the private first-class hotel adjoining the convention center will book 45% of the room nights generated by the convention center;[9] and (2) the hotel will increase the available room supply in Lancaster County by 50,000 to 55,000 room nights per year. However, having concluded that increased

competition is irrelevant, the trial court did not make findings as to how much money Appellants will lose to the adjoining hotel each year.[10] Thus, we are unable to determine here the extent of the burden on Appellants from the increased competition.

Appellants also argue that the trial court did not conduct a proper benefit and burden analysis because it failed to consider payment of the 3.9% Room Tax to be a burden. We agree.

The legal analysis here involves the relation between the *tax* and the benefits derived from the tax. *Leventhal.* In other words, it is a given that the tax is a burden. Indeed, most of the Appellants testified before the trial court that they were unable to increase their room rates because of the 3.9% Room Tax. (Adjudication at 20.) Some of the Appellants testified that, since imposition of the Room Tax, they decided to lower their room rates to better compete in the marketplace. (Findings of Fact, No. 44.) Others testified that, for a period of time, they opted to absorb completely the cost of the tax to retain business that was already paid for prior to January 1, 2000. (Findings of Fact, No. 44.) Thus, there can be no question that the 3.9% Room Tax is a burden on Appellants' business operations.

Nevertheless, the trial court stated that it would not consider any potential lost profits caused by the Room Tax. The trial court stated: (1) consumers do not care whether the 3.9% Room Tax pays for a convention center or goes "into the hoteliers' pockets;" (2) potential lost profits are

9. The trial court states in its April 23, 2001 opinion that this is not a burden on Appellants because the hotel will not book 100% of the room nights. (Trial court's 4/23/01 op. at 11.) We do not understand this distinction. Although the hotel imposes a lesser burden on Appellants by booking only 45% of the room nights, it is still a burden.

10. The benefit and burden analysis requires an examination of the *fiscal* relation of the tax to the protection, opportunities and benefits given in return. *Leventhal.*

"too nebulous for consideration;" and (3) the constitution does not protect potential lost profits. (Adjudication at 21.) With each of these statements, the trial court's reasoning is flawed. First, we are not concerned here with the burden of the tax on consumers but, rather, with the burden of the tax on Appellants. Second, Appellants must charge consumers 3.9% more per room because of the tax, none of which is profit, and 3.9% is not a nebulous figure. Third, the 3.9% charge is not a "potential" lost profit; Appellants actually are collecting it, and it is not a profit.

The trial court's findings indicate that the 3.9% figure yields a total tax of $3 million per year for the convention center and the Visitors Bureau.[11] This means that Appellants will pay $2.4 million [12] from their room revenues each year towards the convention center project alone. Although Appellants will derive some benefit in the not-too-distant future from the remaining $600,000 used by the Visitors Bureau to promote tourism in Lancaster County, Appellants will receive *no* benefit from the annual $2.4 million payment until the convention center is operational. However, we cannot determine from the trial court's findings how many years will pass before the convention center's operations will generate any revenue.

We do know that, once the project is completed, the convention center is expected to generate $2 million to $3 million annually for the hotel industry. (Findings

of Fact, No. 74.) However, we cannot determine from the trial court's findings whether the adjoining hotel will receive 45% of the $2 million to $3 million or whether Appellants will receive the entire amount. Thus, we cannot determine how much Appellants will benefit from the revenue generated by the convention center after its completion.[13]

As an appellate court, we may not make findings of fact that are necessary to perform a proper benefit and burden analysis. Therefore, we must remand this case to the trial court for the making of necessary findings of fact and for a proper benefit and burden analysis.[14]

LEADBETTER, Judge, dissents.

### *ORDER*

AND NOW, this 23rd day of January, 2002, the orders of the Court of Common Pleas of Lancaster County (trial court), dated February 2, 2001 and April 23, 2001, are hereby vacated. This case is remanded to the trial court for a proper benefit and burden analysis, including necessary findings of fact and conclusions of law.

Jurisdiction relinquished.

11. The trial court found that the Visitors Bureau receives 20% of the 3.9% Room Tax, or $600,000. (Findings of Fact, No. 54.) Because 20% represents one-fifth of the total Room Tax, the total Room Tax is $600,000 multiplied by five, or $3 million.

12. Eighty percent of the $3 million, or $2.4 million, will fund the development and construction of the convention center.

13. If Appellants pay $2.4 million per year to build a convention center and, ultimately, receive only $1 million to $1.5 million per year in return, it will be many years after the Authority has completed paying for the convention center before Appellants will receive any financial benefit from the Room Tax.

14. Because of our disposition in this case, we decline to address the remaining issues raised by Appellants.