Howard ACKERMAN, Michele Ackerman, Lee G. Al Becker, John P. Bellis, Catherine M. Bellis, Joseph C. Daniels, Melissa A. Daniels, Paul J. Feather, Josephine S. Feather, Glenn Frederick, Mildred Frederick, Alphonsus Gregaitis, Helen

Gregaitis, Thomas S. Haberman, Denise V. Shoemaker, David A. Kern, Della L. Kern, Mark K. McCool, Jacqulynne A. McCool, Dwight D. Meckel, Deborah J. Meckel, Stephen A. Moore, Joanne M. Moore, Ronald N. Trumbauer, Doris J. Trumbauer, William Adams, Evelyn B. Adams, Charlotte A. Battersby, Linda P. Thompson, Randy Catlin, Joseph Caruvana, Carlos Chiesa, Myrna Chiesa, Louis S. Colasurdo, Elizabeth K. Colasurdo, Richard A. Cooper, Myra Cooper, Robert E. Devito, Janet M. Devito, Jack E. Eldred, Mary K. Eldred, Carole T. Elkin, Larsen Franchino, Franca Franchino, Richard W. Freese, Charlene M. Freese, Rose Marie Good, Howard J. Gronendahl, Margaret A. Gronendahl, Edmund Haring, David Haus, Margaret Haus, Linda M. Heller, Doris M. Sontagh, Fredinand N. Latch, Nancy D. Latch, Anthony Lewandowski, Elizabeth C. Lewandowski, Daniel McDonald, Jayne McDonald, Raymond Motto, Barbara Motto, John O'Donnell, Barbara O'Donnell, William Parkes, Sally Parkes, Ralph Preuster, Audrey Preuster, Joseph J. Rink, Frances M. Rink, Harold Schell, Antoinette Schell, George F. Shipman, Lorraine Shipman, Frank Squillace, Dennis Stewart, Roseanne Stewart, Raymond Verbrugghe, Anna Marie Verbrugghe, Richard Walsh, Barbara Walsh, Marguerite Wisch, David Wolfinger, Carol Wolfinger, James Zisa, Denise Zisa, Gerard F. Altemus, Mary Beth Altemus, John E. Augustine, Joan Bailey, Morton A. Ballin, Mary J. Ballin, Alfred Biserta, Judity Biserta, Kelly Bollinger, Carl J. Buchola, Theresa M. Fiandaca, William E. Campbell, Lynn E. Campbell,

v.

**CARBON COUNTY and Carbon County Board Of Assessment, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 1997.
Decided Nov. 3, 1997.

Alfred K. Hettinger, Allentown, for Appellants.

George W. Westervelt, Jr., Stroudsburg, for Appellees.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, FRIEDMAN and FLAHERTY, JJ.

FRIEDMAN, Judge.

Carbon County and Carbon County Board of Assessments (together, Appellants) appeal from two orders of the Court of Common Pleas of Carbon County (trial court); a September 9, 1996 order concluding that Appellants' assessment of properties is defective because of a lack of uniformity, and a January 10, 1997 order directing Appellants to conduct a county-wide reassessment of all properties within Carbon County within two years of the date of the order.

On appeal to this court,[1] Appellants first contend that the trial court erred or abused its discretion in concluding that Appellants' assessment of properties is constitutionally defective because it violates Article VIII, section I of the Pennsylvania Constitution requiring that all taxes be uniform. We find neither an error of law nor an abuse of discretion and affirm the trial court's September 9, 1996 order, adopting the well-reasoned opinion of Senior Judge Michael V. Franciosa in *Ackerman, et. al v. Carbon County Board of Assessment,* Court of Common Pleas of Carbon County, No. 94–2505, filed September 9, 1996.

Next, Appellants challenge the trial court's authority to order a reassessment in this case. Once again, this issue was raised before the trial court and ably disposed of in the supplemental opinion of Senior Judge Michael V. Franciosa. As a result, we affirm the trial court's January 10, 1997 order and adopt the supplemental opinion, *Ackerman et. al v. Carbon County and Carbon County Board of Assessment,* Court of Common Pleas of Carbon County, No. 94–2505, filed January 10, 1997.

### ORDER

AND NOW, this 3rd day of November, 1997, the orders of the Court of Common Pleas of Carbon County, dated September 9, 1996 and January 10, 1997, are hereby affirmed.

---

**1.** Our scope of review in a tax assessment case is narrow. *In re Appeal of V.V.P. Partnership,* 167 Pa.Cmwlth. 282, 647 A.2d 990 (1994), *alloc. denied,* 540 Pa. 615, 656 A.2d 120 (1995). A verdict of the trial court will be affirmed unless it is not supported by substantial evidence, or the court abused its discretion or made an error of law. *Id.* We give the trial court's findings great deference and will not disturb its decision unless there is clear error. *Id.*

FLAHERTY, J., concurs in the result only.

IN THE COURT OF COMMON PLEAS OF CARBON COUNTY, PENNSYLVANIA, CIVIL DIVISION

HOWARD AND MICHELLE ACKERMAN, et al.,
Appellants,

vs.

CARBON COUNTY AND CARBON COUNTY BOARD OF ASSESSMENT, Respondents.

No. 94-2505.

*OPINION OF THE COURT*

MICHAEL V. FRANCIOSA, Senior Judge.

Appellants [1] are a group of Carbon County property owners who are appealing real estate assessments on their individual properties. In addition to their individual appeals from the Board Assessment, the appellants are seeking a declaration that Carbon County's current method of determining real property assessments violates the uniformity of taxation requirement found in Article VIII, Section 1 of the Pennsylvania Constitution.

A hearing on the "uniformity" issue was held on August 3, 1995. At that time, the Board of Assessment met its initial burden of proof by introducing the assessment rolls for the properties in question; by testimony of the Chief Assessor which established that the valuation of the subject properties were continuous both from the period of time of the appeal through the time of the hearing; and, by documenting the common level ratio published by the State Tax Equalization Board for Carbon County for the relevant period of time in which the appeal is filed and also the year in which the appeal is heard. Because the assessment must be considered prima facie valid where the assessment record is admitted into in the evidence, the taxpayer has the burden to rebut the assessment's validity. *Fosko v. Board of Assess. App., Luzerne Co.*, 646 A.2d 1275, 166 Pa.Cmwlth. 393 (1994).

In this case, the evidence produced by the appellants to satisfy their burden shows the following: The last county-wide reassessment was done in 1969. Thus, it has been twenty-seven years since the last county-wide reassessment. Moreover, Carbon County uses the cost approach. Under the cost approach, the value of a property is determined by estimating the construction cost, subtracting accrued depreciation, and adding the estimated land value. A factor which tends to complicate the use of the cost approach is the County's need to utilize 1969 construction costs to value properties built since that time. There is another problem with depreciation procedures. Properties that were in existence in 1969 got a depreciation credit of 35%. Thereafter, all properties received a periodic depreciation credit, but the original gap in favor of the older properties has never been equalized. In addition, significant changes in market values of properties have occurred since 1969. Route 80 was constructed through the county; and, large subdivisions were opened adding many newly constructed types of properties to the tax rolls.

Three witnesses were offered by appellants on the subject of uniformity. The testimony of Scott Dotterer shows a disparity in sales assessment ratios in the Borough of Jim Thorpe. He made an analysis of actual sales prices to assessment ratios for seven properties. On average these seven homes were assessed at 2.6% of the sales price as compared to the 9.6% assessment for his own property. When he did an analysis on 1994 sales, Dotterer found he was paying real estate taxes at a rate almost three times greater than the owners of similarly valued properties.

The difficulty encountered in arriving at assessments of newly constructed properties is demonstrated by evidence regarding the Towamensing Trails Community. Such evidence discloses that the use of 1969 cost data to assess newer properties produced the following results:

There were 65 transactions in the Towamensing Trails Community from October 1, 1993 to September 30, 1994; in 53 of them the property was over assessed and in 12, the properties were under assessed;[2] in total, 79% of the sales at To-

---

1. Over six hundred Carbon County property owners have joined in these consolidated assessment appeals.

2. "Under" and "over" refer to whether the sale price/assessment ratio was higher or lower than the Carbon County common level ratio of 8.6%.

wamensing Trails showed an assessment more than 15% greater than the common level ratio; as a whole, Penn Forest Township had a 1994 common level ratio of 9.8% compared with a common level ratio of approximately 5% in the Borough of Jim Thorpe;[3] this means that Penn Forest Township taxpayers were assessed at rates almost double those applied to property owners in the Borough of Jim Thorpe.

It is asserted by the County that appellants have not met the burden of proof required to establish a lack of uniformity in assessments. In support of its argument, the County cites the case of *Albarano v. Board of Assessment and Revision*, 90 Pa. Cmwlth.Ct. 89, 494 A.2d 47 (1985). We believe the County's reliance on *Albarano, supra*, is misplaced. In that case, the Commonwealth Court found the evidence insufficient because the taxpayer offered evidence of assessments of comparable properties, but failed to present proof of market value. Here, the taxpayers presented credible evidence consisting of the analyses of actual sales prices to assessment ratios for seven properties in the Borough of Jim Thorpe and sixty-five transactions in the Towamensing Trails Community.

■ Although the witnesses called by the appellants were not qualified as real estate appraisers, this does not, as the County contends, render their information inadmissible in considering lack of uniformity. As our Supreme Court stated in *McKnight Shopping Center, Inc. v. Board of Property Assessment*, 417 Pa. 234, 209 A.2d 389 (1965):

"In considering whether or not a particular assessment is lacking in uniformity, however, a property owner, the taxing authority and the courts may rely on any relevant evidence.... It would be easily satisfactory to produce, if possible, evidence regarding the ratios of assessed values to market values as the latter are reflected in actual sales of any other real estate in the taxing district for a reasonable period prior to the assessment date. Thus, for example, if competent evidence of an overall current ratio based on sales within the taxing district is available, it may be introduced.

Whatever the procedure, the taxing authority always has the right to rebut the owner's evidence, and the weight to be given all the evidence is always for the court to determine. The taxing authority cannot, however, do nothing except at the risk of having the owner's testimony accepted by the court. Where that testimony is relevant and credible, it is entitled to be given weight; and, unless it is rebutted, it must necessarily be accepted." *See McKnight, supra*, 417 Pa. 234, at pages 241–242, 209 A.2d 389, at page 393.

Moreover, in determining uniformity, the meaning of "comparables" is different than when an expert witness is determining the market value of a specific property. Thus, in determining uniformity, the ratios of assessed values to market values of all properties are all relevant and, hence, in that sense all properties are "comparables." *See, McKnight, supra*, 417 Pa. 234 at page 241, 209 A.2d 389, at pages 392–393, citing *Delaware, Lackawanna and Western Railroad Company's Tax Assessment (No. 1)*, 224 Pa. 240, 73 A. 429 (1909).

■ The Pennsylvania Supreme Court has held that taxation is not a matter of exact science and that absolute equality or perfect uniformity is not necessary to satisfy the constitutional requirement of uniformity. *Columbia Gas Transmission Corporation v. Commonwealth*, 468 Pa. 145, 360 A.2d 592 (1976). The test of uniformity is whether there exists a reasonable distinction and difference between classes of taxpayers sufficient to justify different tax treatment. *F.J. Busse Company v. Pittsburgh*, 443 Pa. 349, 279 A.2d 14 (1971). It is the burden of the taxpayer alleging a violation of the uniformity clause to show that there is deliberate discrimination in the application of the tax or that it has a discriminatory effect. *Butler Area School District Appeal*, 100 Pa.Cmwlth. Ct. 452, 515 A.2d 326 (1986).

Appellants have not shown deliberate discrimination in this case. However, the testi-

---

3. *See* appellants' "Exhibit # 4".

mony and documentary evidence offered by Roger Downing does show that the assessment practices utilized over the past twenty-seven years have reached a point where they have a discriminatory effect. Mr. Downing was accepted by the Court as an expert on assessment statistics. Using STEB[4] data, he testified that 44% of Carbon County properties transferred in 1994 were under-assessed by more than 15% and 29% were over-assessed by more than 15%. The importance of this evidence is that it reveals how unreliable the predetermined common level ratio[5] has become in Carbon County. In the period 1993–94, the predetermined ratio for Carbon County was 8.6%. The exhibits offered by Mr. Downing illustrate that the predetermined ratio could not be applied to 73% of the properties. Other evidence presented by Mr. Downing referred to the Coefficient of Dispersion (COD). The COD is a statistical tool, expressed as the average percentage deviation between the ratios of a property's assessed to market values and the County's common level ratio. Under standards established by the International Association of Assessing Officers (IAAO), the COD for residential properties should not exceed 15%. Carbon County's COD is 40%.

Our Supreme Court's decision in *City of Lancaster v. Lancaster County*, 143 Pa. Cmwlth.Ct. 476, 599 A.2d 289 (1991), noted that COD is an indicator of whether the constitutional requirement of uniformity was satisfied and as a factor in determining whether a county-wide reassessment was necessary. While *City of Lancaster, supra*, dealt with selective reassessments rather than a county-wide reassessment, the type of evidence presented by Mr. Downing in the case at hand was reviewed by our Supreme Court and accepted as admissible and relevant evidence. In fact, the Supreme Court

reversed the lower court by holding, in part, that the Common Pleas "finding regarding the acceptable COD" was not supported by substantial competent evidence. *See, City of Lancaster, supra*, 143 Pa.Cmwlth. at page 492, 599 A.2d at page 297. Here, it is beyond dispute that Carbon County's COD of 40% is well in excess of the standard and, therefore, clearly unacceptable.[6]

The IAAO standard is that reassessments should be done in cycles of no longer than four to six years. However, the applicable statutes do not fix a definite period to adjust assessments. In each case, the constitutional requirement is the reasonable attainment of a rough equality in tax treatment of similarly situated property owners. *Allied Stores of Ohio v. Bowers*, 358 U.S. 522, 526–527, 79 S.Ct. 437, 440–441, 3 L.Ed.2d 480 (1959). But, where discrepancies have continued for more than ten years adjustments to the assessment of property is necessary to remove the resulting inequalities. *Allegheny Pitt. v. Webster County*, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989).

■ We agree with appellants' contention that "the evidence leads to an inescapable conclusion that Carbon County's 26 year hiatus in doing a county-wide reassessment has created intolerable and illegal assessment disparities among properties of comparable value." In addition to the staleness of 1969 cost data, the county's scheme magnifies the impact of transitional delay because it uses the cost approach alone without consideration of market value. With the passage of time, therefore, the method of assessment utilized by Carbon County does not provide for some perception of the general change in area property values.[7]

A very similar situation occurred in Chester County. There, assessments had not

4. STEB is the abbreviation for the State Tax Equalization Board.

5. Common level ratio is the ratio of assessed value to current market value; and, the predetermined common level ratio is calculated annually by STEB.

6. Although not on point with the issues in this case, in *City of Harrisburg v. Dauphin County Board of Assessment Appeals*, 677 A.2d 350 (Pa.

Cmwlth.1996), the Court used COD evidence to support its finding of "a lack of uniformity".

7. Our review of the cases discloses that Carbon County is out-of-step with most of the other counties when it comes to assessment procedures. The over-whelming practice is to utilize the current market value or a base year market value.

been revised on a county-wide basis for about 20 years. It was apparent to the Court that older properties in the County were undervalued in terms of fair market value. Because the valuations placed on the various properties throughout the County had become so disparate over a period of 20 years, the Chester County Court of Common Pleas ordered a reassessment. *Behe, et al. v. Chester County Board of Assessment Appeals*, 41 Ches.Co.Rep. 90 (1993).[8]

In our opinion, the time has come for a re-valuation of all property within Carbon County to bring its system up to date and to clear up the inequities where the owners of older properties are having their tax burden subsidized by people who have built since 1969. As noted by our Commonwealth Court in *City of Lancaster, supra*, "where ... there has not been an assessment of the entire County since 1960[9], there can be no uniformity of assessment." *City of Lancaster, supra*, 143 Pa.Cmwlth. 476, 599 A.2d 289, at page 300.

Whether or not such a re-valuation requires a county-wide assessment cannot be determined by us at this time. Under our Order of Court dated June 21, 1995, we agreed to postpone a decision on the question of whether or not a county-wide reassessment is the only remedy until after the uniformity issue was decided. Having found a lack of uniformity, we enter the following:

## ORDER OF COURT

AND NOW, this 9th day of September, 1996, having concluded in the foregoing Opinion that Carbon County's assessment of properties has become defective because of a lack of uniformity, it is ordered, adjudged and decreed that a hearing shall be held at 10:00 a.m. on October 22, 1996. At such hearing, the Court will determine what remedy is necessary to cure any defect or defects.

## SUPPLEMENTAL OPINION

In this case, Taxpayers took an appeal to the Common Pleas Court after being denied relief by the Carbon County Board of Assessment Appeals. The individual assessments, involving approximately 600 property owners, were consolidated when the proceedings attached for a hearing before this Court. In these proceedings, Taxpayers raised a constitutional question by alleging that the current method used in Carbon County to assess properties violates the uniformity of taxation requirement set forth in Pa. Const. Art. 8, § 1. Under a stipulation of counsel, approved by the Court, it was agreed that the Court would decide whether or not the present system violated the uniformity of taxation requirement, and, if the Court found such a violation, no reassessment would be ordered until the county had the opportunity to offer an alternative to a county-wide reassessment.

On September 9, 1996, we filed an Opinion declaring that the current assessment system used in Carbon County had become defective because of a lack of uniformity. However, pursuant to the aforementioned stipulation, the Order of Court which accompanied our Opinion did not provide for an immediate remedy. Instead, it called for an additional hearing to assist the Court in determining whether or not there was an alternative to a county-wide reassessment.

On September 24, 1996, Carbon County filed a notice of appeal to the Commonwealth Court of Pennsylvania. Since the appeal was taken before this lower court had conducted a hearing on the appropriate remedy, it was dismissed as being premature.[1]

The remedy hearing was held on December 30, 1996. During the brief proceeding, the Chief County Assessor testified that: (1) a county-wide assessment would cost somewhere between $2,000,000 to $3,000,000; and (2) it would be a three year project—one year to gather the necessary information, a

---

8. The case was appealed to the Commonwealth Court; however, we were unable to find a decision on the part of the Commonwealth Court concerning the ruling reached on appeal.

9. The lawsuit in the *City of Lancaster* case was filed in 1987. Thus, the Court was dealing with approximately the same twenty-seven year hiatus as in this case at bar.

1. We have not received a copy of the dismissal, but counsel have agreed the matter has been remanded for further proceedings in this lower court.

second year to implement a new system, and a third year to handle appeals from the new assessment of individual properties.

██ In determining what remedies this Court may invoke, the decision of the Commonwealth Court in *City of Lancaster v. County of Lancaster,* 143 Pa.Cmwlth. 476, 599 A.2d 289 (1991) supplies two answers to that question. First, while we sympathize with the county's assertion that a total reassessment is a costly undertaking, cost is not a relevant factor. When a taxing scheme is constitutionally infirm, the necessary reform cannot be ignored. *See, City of Lancaster, supra,* 599 A.2d at page 301. Second, any plan to update an assessment program must be implemented by a complete county-wide reassessment. In that regard, we agree with the observation made by President Judge Wood in the case of *Behe, et al. v. Chester County, etc.,* 41 Ches.Co.Rep. 90 (1993). As stated by President Judge Wood:

> "The Defendants, in their brief, cite *Croasdale v. Dauphin County Board of Assessment Appeals,* 89 Pa.Cmwlth. 409, 492 A.2d 793 (1985) ... [H]owever, I read that case as simply standing for the proposition that piecemeal assessments won't do. You have to do the whole county at once. I have no argument with that proposition. That is what *City of Lancaster* says as well." 41 Ches.Co.Rep. at page 95.

██ At the hearing held on December 30, 1996, we granted the county's request to incorporate into the record its brief lodged on November 12, 1996. In it, the county challenges the court's authority to go forward with ordering any reassessment in this case. Here, the Taxpayers followed the mandated statutory procedure. The fact that the recent decision reached in *Harrisburg et al. v. Dauphin County Board of Assessment Appeals et al.,* 677 A.2d 350 (Pa. Cmwlth.1996) would have permitted them to bypass the statutory remedy is of no consequence. Assuming an action in equity would have been less burdensome, the Taxpayers did, nonetheless, assume the task of appealing. Moreover, the consolidation of their individual appeals from the Board of Assessment did provide a procedure whereby the larger question of uniformity was expeditiously and efficiently resolved. Furthermore, our earlier Opinion refers to several cases where the uniformity issue was raised in appeals taken pursuant to the statutory remedy for persons aggrieved by assessments. *See, Albarano v. Board of Asses.,* 90 Pa.Cmwlth.Ct. 89, 494 A.2d 47 (1985); *McKnight Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa. 234, 209 A.2d 389 (1965); *Delaware, Lackawanna and Western Railroad Company's Tax Assessment (No. 1),* 224 Pa. 240, 73 A. 429 (1909); and, *Butler Area School District Appeal,* 100 Pa.Cmwlth.Ct. 452, 515 A.2d 326 (1986).

██ Finally, we disagree with the county's suggestion that these 600 taxpayers can be granted relief under the provisions of 72 P.S. § 5453.602(a)(ii). We remain firmly convinced that a reassessment limited to the areas covered in this particular appeal would be invalid. If we select these properties and approve an assessment methodology different from properties in the same class located elsewhere in the county, such a partial revaluation runs afoul of the holdings in *City of Lancaster* and *Croasdale, supra.*

WHEREFORE, we enter the following:

### ORDER OF COURT

AND NOW, this 10th day of January, 1997, Carbon County and Carbon County Board of Assessment are ordered to conduct a reassessment of all properties in Carbon County.

To that end, we further direct that Carbon County shall complete such county-wide reassessment within two (2) years from the date of this Order.