# Eckman v. Carbon County Board of Assessment Appeals

C.P. of Carbon County, nos. 00-2037, 00-2381, 00-2246, 00-2284, 00-2453.

*Carole J. Walbert,* for appellant Eckman.
*David W. Addy,* for appellant Holiday Pocono.
*Michael L. Ozalas,* for appellant Levering.
*Roger N. Nanovic,* for appellants Selert.
*William G. Schwab,* for appellant school district.
*Daniel A. Miscavige* and *Stephen P. Vlossak,* for appellee Board of Assessment.

LAVELLE, *P.J.,* January 31, 2001—We consolidated these tax assessment appeals for the sole purpose of determining whether the Carbon County Board of Assessment Appeals violated the provisions of the Sunshine Act and appellants' other due process rights. These five cases are among more than 100 appeals now pending before this court as a result of a recent county-wide real estate reassessment.[1]

In each of the five cases under review, appellants raise due process issues concerning the manner in which the Board of Assessment conducted their appeals. Specifi-

1. The reassessment was conducted pursuant to an order entered on September 9, 1996, by the Hon. Michael V. Franciosa specially presiding, in *Ackerman v. Carbon County,* no. 94-2505; Judge Franciosa's order was affirmed by the Commonwealth Court at 703 A.2d 82 (Pa. Commw. 1997), *alloc. denied,* 551 Pa. 706, 712 A.2d 287 (1998).

cally, appellants charge violations of the Sunshine Act[2] and other due process violations, alleging that the board:

"(1) Failed to conduct public hearings;

"(2) Failed to conduct its deliberations at a meeting open to the public;

"(3) Failed to issue written adjudications which included findings and reasons;

"(4) Failed to keep minutes; and

"(5) Impermissibly met with third parties during its deliberations."

In response to these arguments, the board counters that the Sunshine Act is inapplicable because the board, when it sits as a Board of Assessment Appeals, functions as a quasi-judicial body. The board further insists that taxpayers have no right to know how the board acted and may not inquire into the decision-making process. Finally, the board argues that even if the Sunshine Act is applicable, any due process violations are cured by the availability of a de novo hearing upon appeal to this court.

We conducted an evidentiary hearing on December 15, 2000, at which time testimony was received from Dwight Penberth, one of the members of the board.

## SUMMARY OF EVIDENCE

The practices and procedures used by the Board of Assessment Appeals emerge from the testimony of board member Penberth.[3] He testified that the hearings were

---

2. 65 Pa.C.S. §701 et seq.

3. Mr. Penberth apparently had not been subpoenaed by any of the parties, but happened to be in the courtroom as an interested observer when he was called to the witness stand by appellant Eckman.

conducted by a single member of the board pursuant to a waiver signed by the appellant. In addition to himself and the taxpayer, the hearing was attended by representatives from the tax assessment office and Cole-Layer-Trumble (CLT), a private company which had been hired by the county to perform the reassessment. The latter were present, he said, not to participate in the hearing or offer evidence, but merely "to provide us with whatever—any information we required from the [computer] system." (NT, 33-34.) The assessment office and CLT representatives were not identified or sworn as witnesses. The hearing was not a public meeting nor was notice of the hearing published or given to anyone other than the taxpayer. No minutes or records were kept of the hearings or deliberations. (NT, 35.) No evidence was presented at the hearings on behalf of the county. Following each hearing, the hearing officer met with the other two members of the board to discuss the case and render a determination as to market value. These meetings, which occurred at various times and at different locations throughout the day or at the end of the day, were likewise not advertised or open to the public, nor was the taxpayer permitted to attend same even though the assessment office and CLT representatives were present. (NT, 38-39.) The votes of the board members were not recorded and reasons were not given in support of the decisions made. (NT, 39.) The determinations were handed to the assessment office, which then mailed them to the taxpayers.

Mr. Penberth also testified that no written rules, policies or regulations were provided to board members or

to taxpayers to guide them in conducting these hearings. (NT, 26.)

## ·DISCUSSION

The surprising threshold issue in these cases is whether or not the Board of Assessment Appeals is an "agency" within the defined meaning of that term in the Sunshine Act. What makes it surprising is that the board raises this question and contends the Act is not applicable to tax assessment appeals without any case law to support its contention and in the face of clear and unambiguous statutory language to the contrary.

Section 703 of the Sunshine Act defines "agency" as:

"The body, and all committees thereof authorized by the body to take official action . . . on matters of agency business, of . . . any board, council, authority or commission of . . . any political subdivision of the Commonwealth . . . ."

The same section defines "agency business" to include "the adjudication of rights, duties and responsibilities" and defines "deliberation" as "the discussion of agency business held for the purpose of making a decision." The Act also defines "meeting" as "any prearranged gathering of any agency which is attended . . . by a quorum of the members . . . for the purpose of deliberating agency business or taking official action."

The Board of Assessment Appeals is appointed by the Board of Commissioners of Carbon County,[4] a political subdivision of the Commonwealth, and authorized by

---

4. Pursuant to section 301 of the Fourth to Eighth Class County Assessment Law (72 P.S. §5453.301).

them to hear and take official action on real estate assessment appeals. Essentially, the board adjudicates the county tax base for levying taxes on individuals or corporations who have appealed their assessments. The board is therefore a powerful body of county government and clearly meets the criteria for "agency" in the Sunshine Act. Further, their discussion of the issues raised in an appeal for the purpose of making a decision thereon qualifies as a "deliberation" and the ultimate decision of the board to raise or lower an individual assessment equates to "official action." We have no hesitancy in holding that the Board of Assessment Appeals is, indeed, an agency as defined by 65 Pa.C.S. §703 and as such its hearings are subject to the provisions of the Sunshine Act.

We now move on to consider whether the board violated the Sunshine Act.

The purpose of the Sunshine Act is to open the decision-making process to public scrutiny and accountability. *Consumers Education and Protective Association v. Nolan,* 470 Pa. 372, 386, 368 A.2d 675, 682-83 (1977) (construing the original Sunshine Act enacted in 1974). The purpose of the Act is derived from the legislature's expressed policy that the "right of the public to be present at all meetings of agencies and to witness the deliberation . . . and decision-making of agencies is vital to the . . . proper functioning of the democratic process and that secrecy in public affairs undermines the faith of the public in government . . . ." 65 Pa.C.S. §702(a)

The Sunshine Act mandates that "Official action and deliberations by a quorum of the members of an agency

shall take place at a meeting open to the public." 65 Pa.C.S. §704.

Mr. Penberth's testimony persuades us that the Board of Assessment Appeals committed substantial and multiple violations of the Sunshine Act. First, the board diminished full public scrutiny and accountability when it failed to provide public notice in the newspapers and other media as to where and when the assessment appeals were to be held.

Second, it kept no records or minutes of its proceedings as required by section 706.[5]

Most troubling, the board deliberated in private and permitted representatives and employees of the county and Cole-Layer-Trumble to be present during their deliberations. At the same time, the board excluded the appellants from their deliberations. This process not only violated the Sunshine Act, but it also raises disturbing questions involving fundamental due process rights of the taxpayers. Did the members of the board receive additional evidence relative to the fair market value of the property? Did they deny the property owner the opportunity to confront this additional evidence? Did these third parties influence the decision of the board on fair market value valuations? Who made the decision, the board or these third parties?

While Mr. Penberth assured the court that these third parties had no input in the deliberation process, and appellants presented no evidence to the contrary, their very

---

5. Minutes of appeal hearings are also required to be kept by section 702(e) of the Fourth to Eighth Class County Assessment Law (72 P.S. §5453.702(e)).

presence during the crucial deliberation stage gives rise, at the very least, to an appearance or suggestion of impropriety to such an extent that the basic fairness of the hearings was constitutionally impaired.

A tribunal's impartiality is a fundamental prerequisite of a fair hearing, *In Interest of McFall,* 533 Pa. 24, 617 A.2d 707 (1992), and it is clear that a violation of due process may be found even if no actual prejudice can be proved. See *Lyness v. Commonwealth, State Board of Medicine,* 529 Pa. 535, 605 A.2d 1204 (1992) (constitutional due process rights held violated where same medical board which filed accusations against doctor sat in judgment at disciplinary hearing; the mere possibility of bias was sufficient to raise due process concerns).

We have no doubt that these actions and omissions seriously undermined the appellants' and the public's faith in the assessment appeals process which the Sunshine Act was designed to foster and encourage. In addition, it is clear that the board also violated provisions of the Fourth to Eighth Class County Assessment Law,[6] section 702 of which requires that all appeal hearings be open to the public. And while not specifically raised in the pleadings, we also find that the board violated the provisions of the Local Agency Law[7] by failing, inter alia, to include findings and reasons in support of its determinations as required by section 555 of that Act.

We cannot lay the blame for these numerous due process violations entirely on the Board of Assessment Appeals. Board members were given the daunting task of

---

6. 72 P.S. §5453.101 et seq.

7. 2 Pa.C.S. §105 et seq.

hearing some 5,700 appeals within the relatively short time constraints imposed by the Assessment Law. To make matters worse, the county had no written policies or regulations in place to guide the board in conducting the hearings and it appears that board members were given little, if any, training to prepare them for their task. In effect, the board was left to navigate the stormy seas of assessment appeals in a rudderless ship without a compass.

We are convinced that the board must adopt a written manual of rules and regulations for the conduct of appeal hearings,[8] and we will therefore direct the County Board of Assessment Appeals to present to the court within 90 days a set of written rules and regulations governing its practices and procedures, accompanied by a certification that these rules and regulations will be followed in all tax assessment appeals henceforth filed in this county.

Having determined that the Carbon County Board of Assessment Appeals violated appellants' constitutional due process rights, as well as the provisions of the Sunshine Act, the Local Agency Law, and the Fourth to Eighth Class County Assessment Law in each of the instant appeals, our next task is to fashion an appropriate remedy. The law affords us several options in this regard, one of which is to invalidate the decisions and remand the cases back to the board with instructions to rehear the appeals in compliance with all statutory and constitutional requirements. We carefully considered a

---

8. As, indeed, it is required to do by statute; see section 702 of the Assessment Law, which provides that "all hearings . . . shall be conducted in accordance with regulations prescribed by the board."

remand but decided that it would be inappropriate in these cases. Although a remand would be a suitable sanction, it would penalize the appellants by imposing an unfair financial burden upon them. Since there is a strong likelihood that any rehearing before the board would be followed by a second appeal to this court, taxpayers would be compelled to finance two additional hearings rather than just one before this court. Additionally, a remand would further delay appellants' right to have their appeals promptly heard and disposed.

The fairest and, in our opinion, most expeditious and cost-effective remedy for these taxpayers and for the county will be for the court to hear their appeals de novo and afford appellants all of the procedural and due process safeguards they were denied by the Board of Assessment Appeals.[9]

Hearing these appeals de novo renders moot appellants' Sunshine Act and due process issues, well-taken though we believe them to be.

In accordance with the foregoing, we are today entering the following order:

## ORDER

And now, January 31, 2001, upon consideration of the above-captioned tax assessment appeals and the briefs

---

9. Counsel for Eckman, in her brief, suggests that an appropriate sanction would be to strip the county of its right to establish a prima facie case by resting on the assessment record in the appeals to this court, and thus shift the burden of proof from the taxpayer back to the board. While we find this remedy appealing and appropriate, we do not believe we possess the legal authority to grant it.

and arguments of counsel, and after hearing thereon, the court concludes that:

(1) The Carbon County Board of Assessment Appeals violated the provisions of the Sunshine Act, as well as fundamental constitutional due process rights of appellants, in its determinations of the within appeals; and

(2) All of the violations set forth in the opinion of the court will be cured by affording appellants de novo hearings.

Accordingly, it is hereby ordered and decreed as follows:

(1) Betty Eckman, Holiday Pocono Civic Association Inc., Kermit J. Levering, Robert B. and Michelle A. Selert, and the Lehighton Area School District shall have de novo hearings on their tax assessment appeals; and

(2) The Carbon County Board of Assessment Appeals is hereby directed to prepare and submit to the court, within 90 days from the date of this order, a code of rules and regulations for the conduct of assessment appeal hearings, said rules and regulations to be consistent with the provisions of the Sunshine Act, Local Agency Law, Fourth to Eighth Class County Assessment Law, the County Code and all other applicable statutes, together with a verification to the effect that all of said rules and regulations will be adhered to in conducting future appeal hearings.