**Henrietta BEATTIE, Gertrude Ellis, Karen Rummel, Sandra Walls, Kenneth Pierce and Mon Valley Unemployed Committee, on their own behalf and on behalf of all others similarly situated, Appellants**

v.

**ALLEGHENY COUNTY, Pennsylvania, James Roddey, its Chief Executive and Manatron, Inc.**

Commonwealth Court of Pennsylvania.

Argued Feb. 4, 2004.

Decided April 15, 2004.

---

Kevin Quisenberry, Pittsburgh, for appellant.

George M. Janocsko, Pittsburgh, for appellee.

BEFORE: COLINS, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN, Judge, SIMPSON, Judge and LEAVITT, Judge.

OPINION BY President Judge COLINS.

The members of this class action (Taxpayers) appeal an order of the Court of Common Pleas of Allegheny County that sustained preliminary objections filed by Allegheny County, its former Chief Executive, James Roddey, and Manatron, Inc. The class members aver that they are homeowners whose houses have actual values of $50,000 or less, and contend that the County's assessment system has caused approximately 80,000 such homes to be over-assessed, and also caused a significant number of high-value homes to be under-assessed. Their complaint[1] filed in equity challenges the constitutionality of the County's property assessment, and seeks declaratory, injunctive, and monetary relief.

Taxpayers asserted that the County had failed to follow a standard adopted by the County in its Assessment Standards and Practices Ordinance. Taxpayers contend that this standard required the County assessment to produce Price Related Differentials (PRDs)[2] no greater than 1.03[3] on a county-wide and inter-municipality basis, and that the County's assessment in 2002 failed to satisfy this standard. In their pleadings Taxpayers have asserted that the County's method of determining the market value of homes has resulted in an unconstitutional lack of uniformity under Article VIII, Section 1 of the Pennsylvania Constitution. Taxpayers do not allege that the County has inappropriately applied disparate ratios to valid home values, but rather the converse——that the method the County used to determine value of homes has led to over-valuation of 80,000 homes that have a true value below $50,000, and an under-valuation of homes that have higher actual values. Complaint, paragraph 53.

Taxpayers raise the following issues: (1) whether the trial court erred in concluding that Taxpayers must avail themselves of the statutory remedies available; (2) whether the trial court erred in dismissing Taxpayers' claim under 42 U.S.C. § 1983; (3) whether the County's 2002 assessment failed to comply with the County's Assessment Standards and Practices Ordinance because the assessment produced PRDs greater than 1.03; and (4) whether the trial court erred in concluding that Taxpayers' challenge to the 2001 assessment is moot.

## 1. Equity Jurisdiction over Uniformity Clause Challenge

Taxpayers first argue that the trial court erred in granting the County's preliminary objections because they have raised a substantial constitutional question regarding the uniformity of the 2001 and 2002 assessments, and there is no adequate statutory remedy to address the harm caused by the assessments.

---

**1.** The complaint before the trial court was actually the second amended complaint.

**2.** "PRDs are determined by dividing the mean ratio of sales to assessed values in the jurisdiction by the weighted mean, an average in which, each individual value is adjusted according to its relative importance in the whole." Taxpayers brief, p. 7.

**3.** PRDs above 1.0 are alleged to be indicative of tax regressivity.

■ However, in *Jordan v. Fayette County Board of Assessment Appeals,* 782 A.2d 642 (Pa.Cmwlth.2001), this Court addressed a challenge brought by a group of taxpayers who sought to have a common pleas court exercise equity jurisdiction over their claim that a county's assessment methods violated their rights under the uniformity clause. In concluding that those taxpayers must exhaust their statutory remedy, we were guided by the Supreme Court's statements in *Borough of Green Tree v. Board of Property Assessments,* 459 Pa. 268, 328 A.2d 819 (1974), wherein that Court noted the distinction between frontal attacks on taxing statutes and those that challenge the methods used to implement taxing authority. The purpose of requiring strict compliance with the statutory remedy is to ensure that the "foundation upon which the administrative process was founded" is not undermined. *Jordan,* 782 A.2d at 646 (quoting *Shenango Valley Osteopathic Hospital v. Department of Health,* 499 Pa. 39, 47, 451 A.2d 434, 438 (1982)). "The premature interruption of the administrative process restricts the agency's opportunity to develop an adequate factual record, limits the agency in the exercise of its expertise and impedes the development of a cohesive body of law in that area." *Id.* See also, *Annenberg v. Commonwealth,* 686 A.2d 1380 (Pa.Cmwlth.1996).

In this case, the trial court correctly concluded that Taxpayers are not presenting a frontal attack on the underlying taxing statute, but rather, as in *Jordan,* challenging the County's assessment methods. The trial court then recognized that, despite the direction of *Borough of Green Tree,* distinguishing facial constitutional challenges from constitutional challenges to the application of a taxing provision, this Court has nevertheless approved of courts exercising equity jurisdiction over uniformity clause challenges involving the latter variety of constitutional claims in limited circumstances.

The reason for this divergence may be that this Court perceived that, while the Supreme Court recognized that an administrative agency should be allowed to exercise its role of specialized fact-finder and apply "its administrative expertise," *Borough of Green Tree,* 459 Pa. at 281, 328 A.2d at 825, there are times when, despite the absence of a facial constitutional challenge, the balance between an administrative agency's exercise of its expertise and its ability to offer complete redress for an alleged wrong of egregious constitutional dimension falls in favor of proceeding in equity.

■ Thus, Taxpayers rely upon, and the trial court considered, several such cases in which courts were permitted to exercise equity jurisdiction despite the existence of a statutory remedy, even where the uniformity challenge did not present a facial constitutional attack. These cases hold in general that a party must establish discrimination in the application of the taxing statute, and that the statutory remedy, if any, is inadequate.

■ As to the first requirement, Taxpayers rely in part upon this Court's decision in *City of Lancaster v. Lancaster County,* 143 Pa.Cmwlth. 476, 599 A.2d 289, 294 (1991), *petition for allowance of appeal denied,* 530 Pa. 634, 606 A.2d 903 (1992). Taxpayers assert that they have raised a substantial constitutional question, albeit, one that involves a constitutional challenge to the application of taxing provisions—— that the County has violated the Uniformity Clause of the Pennsylvania Constitution through its system of assessment. In order to satisfy this first requirement of a substantial constitutional question, a taxpayer must show that a statutory or administrative scheme violates the Uniformi-

ty Clause. A taxing scheme will satisfy the requirements of the Clause if there exists "a reasonable distinction and difference between classes of taxpayers sufficient to justify different tax treatment." *Id.* In *Appeal of Armco, Inc.,* 100 Pa. Cmwlth. 452, 515 A.2d 326, 329 (1986), *petitions for allowance of appeal denied,* 516 Pa. 643, 533 A.2d 714 (1987), this Court stated: "In tax matters, alleged violations of the equal protection clause and the uniformity clause are analyzed in the same manner; a taxpayer alleging that the administration of a tax violates its rights to be taxed uniformly with others of its class must demonstrate deliberate, purposeful discrimination in the application of the tax before constitutional· safeguards are violated." Although the use of the words "deliberate" and "purposeful" seem to indicate some level of intentional culpability is required, an early decision of the Pennsylvania Supreme Court suggests that that requirement is met simply when the challenged system is "part of a systematic, deliberate method of enforcement of the tax laws, and not mere errors or oversights." *Fisher Controls Co. v. Commonwealth,* 476 Pa. 119, 127, 381 A.2d 1253, 1257 (1977).

The question then becomes whether, based upon the factual averments in Taxpayers' complaint, they have shown that the County's methods have a discriminatory effect. In *City of Lancaster,* the County sought to avoid a full re-assessment of the entire county by selecting certain areas to be re-assessed. The last time of a full county-wide re-assessment was approximately twenty-five years before, in 1960. This Court stated: "We conclude that, as a matter of law, the County, in singling out ten of the County's taxing districts, in utilizing a different method of assessment on the properties in those districts, and in making unsubstantiated wholesale adjustments to grade and depre-

ciation factors of certain of those properties, violated ... the uniformity requirement of Article VIII, Section 1 of the Pennsylvania Constitution." *Id.,* 599 A.2d at 299. The Court concluded that the method constituted a de facto countywide reassessment, and that no adequate statutory remedy for a countywide assessment existed. The Court noted that having one court decide the larger question of the constitutionality of a countywide assessment rather than requiring each individual taxpayer to file an appeal provided a more efficient method of review for both taxpayers and the courts.

The Court reached a similar conclusion in *Harrisburg v. Dauphin County Board of Assessment Appeals,* 677 A.2d 350 (Pa. Cmwlth.1996), *petition for allowance of appeal denied,* 548 Pa. 620, 693 A.2d 590 (1997), where the Court held that the County's reassessment program, designed to reassess certain rehabilitated houses in the Shipoke section of the City of Harrisburg using a ratio program, constituted a de facto countywide reassessment. Similarly, *Millcreek Township v. County of Erie,* 714 A.2d 1095 (Pa.Cmwlth.1998), *petition for allowance of appeal denied,* —— Pa. ——, —— A.2d —— (No. 547 W.D. Alloc. Dkt, 1998, filed March 5, 1999), also involved a county that had failed to conduct a county-wide reassessment for a long period of time, resulting in inequities among properties' assessed values. The Court recognized not only this aspect of the case, but also found persuasive the trial court's findings that there were no uniform standards for valuation, nor uniform procedure for assessors to follow.

Of course, those cases are distinguishable from this case in that Allegheny County conducted countywide reassessments in 2001 and 2002. Thus, we cannot conclude that any de facto county-wide reassessment has occurred, or that the

County has created a lack of uniformity by failing to conduct a countywide reassessment within a reasonable time in order to avoid the type of non-uniformity that eventually occurs by the passage of time.

Taxpayers also rely upon *Ackerman v. Carbon County*, 703 A.2d 82, 87 (Pa. Cmwlth.1997), *petition for allowance of appeal denied*, 551 Pa. 705, 712 A.2d 287 (1998), where this Court, in adopting and affirming a trial court's decision, concluded that a failure to institute a countywide reassessment was found to have "created intolerable and illegal assessment disparities among properties of comparable value." Interestingly, *Ackerman* involved not a case arising from a request for relief in equity, but from the consolidation of statutory appeals of some 600 homeowners.

The trial court in the present case considered each of these cases in light of Taxpayers' pertinent factual averments, and stated:

> In this complaint, [Taxpayers] do not allege that there are no county-wide procedures and standards for establishing fair market value. [Taxpayers] do not allege that the assessment system was designed or deliberately operated to produce inequities. [Taxpayers] do not allege that any groups of properties were deliberately singled out for disparate treatment. To the contrary, [Taxpayers] only allege, as to the 2002 assessment, that an assessment system that was apparently designed to treat all properties in the same fashion (i.e., to assess all properties at 100% of actual fair market value) did not achieve this result as to a significant percent of residential properties valued at less than $50,000.

Slip opinion at 26.

The trial court sought to distinguish the above-cited cases by looking to Taxpayers' factual averments, and noting that they were not alleging that the system was **designed or deliberately operated** to produce inequities, or that any groups were singled out deliberately for disparate treatment. The County also seeks to distinguish the above-cited cases by noting that Taxpayers here were not **deliberately** singled out, that their assessments were not the result of a dated countywide assessment, and that the County's method of assessment does not result in a "pervasive or wholesale inequity" that the statutory remedy cannot address. By approaching the issue in this limited manner, we believe the trial court failed to consider, and the County fails to address, whether the method the County used resulted in discrimination. As mentioned above, the discrimination prohibited under the uniformity clause need not be deliberate in the sense that disparate treatment is the purpose of the system; rather, as noted by the Supreme Court in *Fisher*, the operative action is a discriminatory effect that results from a system, rather than simple error or oversight.

Thus, we must consider whether the pleadings support a claim that the methodology the County used had a discriminatory effect, for as noted in *Fisher*, a systematic method that produces a discriminatory effect is also subject to review under the uniformity clause. If there is no such effect, our analysis ends. If the County's method does have a discriminatory effect, we must then consider whether the statutory remedy is adequate to address the resulting inequities.

In *Appeal of Armco*, 515 A.2d at 326, this Court held that an assessment satisfies the requirements of the uniformity clause "where the taxing authority assesses all property at the same percentage of its actual value; application of such a uniform ratio assures each taxpayer will be

held responsible for its pro rata share of the burden of local government."

Some of Taxpayers' initial averments show that certified appraisals and sales of similar homes were much lower than the County-determined fair market value.[4] Taxpayers claim that the 2001 countywide reassessment was flawed because it failed to include a substantial number of property transfers in a developed computer model. Specifically, Taxpayers allege that the County's failure to include all transfers of properties for less then $10,000 skewed the assessment, causing over assessment of lower value properties and under assessment of higher value properties. Additionally, Taxpayers contend that the reassessment placed disproportionate weight on quantitative factors such as size and number of bedrooms. Taxpayers also contend that the County's method of dividing the county into approximately 1,800 neighborhoods contributed to the divergence of actual fair market value to assessed value in discrete neighborhoods.

With regard to the 2002 assessment, Taxpayers point to sales data compiled by the Comptroller of the City of Pittsburgh indicating that 53% of City properties were assessed more than 15% above their actual sale price in 1992. Among homes valued below $50,000, 2,608 homes were assessed more than 15% above actual value, while only 342 were under-assessed. The City's analysis also showed that "18,333 out of 48,610 validated sales (during 1999, 2000, and the first three quarters of 2001) were over-or under assessed by more than 15%. Houses valued at less than $50,000 were almost twice as likely to be over-assessed by more than 15% than houses valued greater than $250,000 (85% of low cost sales which were substantially incorrectly assessed were overvalued more than 15%; while only 45% of the most expensive homes, which were substantially incorrectly assessed were overvalued; 55% of these high priced homes were actually undervalued)." Complaint, paragraph 48.

■ It goes without saying that, if all properties are overvalued by the same percentage, then the tax burden, even with overvaluation would at least provide a degree of parity regardless of actual fair market value. Thus, it seems equally clear that, if an assessment scheme results in assessed values that depart significantly from true market value, such property owners will not be paying their proportionate share of the tax burden. Where such a departure affects only certain segments of property owners, discrimination may be a result.

■ As the Supreme Court stated in *Leventhal v. City of Philadelphia*, 518 Pa. 233, 239, 542 A.2d 1328, 1331 (1988):

So far as the reasonableness of classifications made for the purposes of taxation is concerned, the Uniformity Clause of the Constitution of Pennsylvania and the Equal Protection Clause of the United States, stand in *pari materia*. Both the federal equal protection clause, as applied to taxing statutes, and the state constitutional requirement of uniformity of taxation "upon the same class of subjects" (Pa. Const.Art.VIII, § 1) mandate that classification in a taxing scheme

---

4. For example, taxpayer Beattie's property was assessed at $47,600, while four years earlier, a house two doors away she alleges to be in better condition sold for only $30,000. Taxpayer Ellis had an appraisal performed last year, obtaining a market value of $38,000, but the County assessed the value at $57,100 in 2002. Similarly, Taxpayer Rummel challenged her assessment in 2001, and obtained from a hearing officer a market value of $17,500, based on a private appraisal; however, the County assessed her property at $68,700.

have a rational basis. In either case, a classification for tax purposes is valid when it "is based upon some legitimate distinction between the classes that provides a non-arbitrary and 'reasonable and just' basis for the different treatment." Where there exists no legitimate distinction between the classes, and thus, the tax scheme imposes substantially unequal tax burdens upon persons otherwise similarly situated, the tax is unconstitutional.

(Citations omitted.)

 This Court has noted that "absolute equality and perfect uniformity in taxation are not required." *Lee Hospital v. Cambria County*, 162 Pa.Cmwlth. 38, 638 A.2d 344, 351, *petition for allowance of appeal denied*, 538 Pa. 661, 648 A.2d 791 (1994). The uniformity clause requires "only substantial uniformity and approximate equality." *Id.* As stated in *Appeal of Armco*, uniformity is achieved when the taxing authority assesses all property at the same percentage of its **actual** value. There then exists the possibility that, even if the taxing authority complies with the requirement that the **same percentage** of value applies to all properties for the purpose of determining tax liability, inequities may arise if valuation is performed improperly. The result may be the same in such a scenario as if the taxing authority applied a different percentage to the value of the property, if the base value on which that assessment is grounded is not the actual value and was determined in a non-uniform manner. By varying part of the equation, if not that part requiring application of a uniform ratio, the result may well be the same as if the taxing authority did apply different ratios to different categories of properties. In either circumstance, some people will not pay their pro-rata share of the tax burden. Such a result can be characterized as being discriminatory.

 However, even if we assume that Taxpayers have raised a substantial constitutional question, and established a discriminatory effect, we still must consider the adequacy of the statutory remedy. Here Taxpayers have not asserted that the County is applying disparate ratios to actual value. While they recognize this distinction, Taxpayers assert that "Individual appeals from the reassessment can at most reduce an over-assessment to a property's actual value. Since tax charges are a product of the assessment and millage, and millage is based on total assessed value [of all properties in the county] the under-assessment of a substantial proportion of homes will cause lower valued homeowners to be overcharged for taxes even if their individual assessment has been corrected." Complaint, paragraph 53. They assert that an appeal of an assessment could not address this concern, because they have no power to challenge another property owner's assessment. However, while a taxpayer may not challenge the taxing authority's assessment of another property owner's under assessment, Taxpayers have not asserted that they may not request the Board of Assessment Appeals to recalculate the millage for the purpose of applying an accurate millage solely to their appeals. This brings us back to the point of *Borough of Green Tree*——that those agencies that have expertise in a particular area should be left to exercise that expertise in evaluating claims of this kind. Taxpayers have not alleged that the Board cannot re-evaluate the total millage in an assessment appeal, and accordingly, we are not persuaded that the statutory appeal process is inadequate. As we noted in our decision in *Annenberg*, 686 A.2d at 1383, "[t]he Board of Assessment Appeals has expertise in applying the tax laws of the Commonwealth and in dealing with the kinds of

complicated questions of valuation and of liability or exemption...."

Additionally, a similar tax challenge in the administrative appeal (rather than equitable) process in *Ackerman* demonstrates that the statutory remedy can accommodate a multitude of tax assessment issues. As noted above, that case involved a consolidated appeal of 600 homeowners who challenged Carbon County's assessments, asserting that they violated the Uniformity Clause. The trial court examined various indicators of tax disparity, such as Coefficients of Dispersion, a statistical tool that helps determine the reliability of assessments. While the approach Taxpayers take here may be one way of demonstrating lack of uniformity, *Ackerman* illustrates that there are methods of demonstrating non-uniformity to the administrative agency and to the trial courts on appeal in the statutory process that may address their complaint. Taxpayers claim that the Board cannot consider relevant evidence as to millage and the effect of over or under assessment, but they do not point to any rules or regulations that would preclude the Board's consideration of such information. Accordingly, we cannot conclude that Taxpayers have satisfied their burden to establish that no adequate legal remedy exists.

### 2. § 1983 Claim

■ Taxpayers also claim that the trial court erred in dismissing their claim under 42 U.S.C. § 1983. As noted above, Taxpayers have not established that the statutory remedy is inadequate to address their alleged injury. In *Murtagh v. Berks County*, 715 A.2d 548 (Pa.Cmwlth.1998), *petition for allowance of appeal denied*, 557 Pa. 656, 734 A.2d 863 (1999), this court concluded that "[b]ecause Pennsylvania's administrative process for challenging tax assessments provides taxpayers with an adequate state remedy, the trial court did

not have subject matter jurisdiction to consider taxpayers § 1983 action absent the exhaustion of their administrative and judicial remedies." *Id.*, 715 A.2d at 552. This conclusion was recently confirmed by this Court in *Jordan*. We therefore conclude that the trial court did not err in dismissing Taxpayers' § 1983 action.

### 3. Noncompliance with Ordinance PRDs

■ Taxpayers claimed that the County failed to comply with standards imposed by the County's Assessment Standards and Practices Ordinance. This issue presents a question of law as to whether the assessment satisfies the ordinance. We see no reason why this issue cannot be addressed in an appeal to the Board. Accordingly, we conclude that the trial court did not err in dismissing Taxpayers' complaint in this regard.

### 4. Mootness of Challenge to 2001 Assessment

■ The trial court, in a footnote, stated that it would not address allegations in Taxpayers' complaint regarding the County's 2001 countywide reassessment. The trial court relied upon our decision in *Israelit v. Montgomery County*, 703 A.2d 722 (Pa.Cmwlth.1997), *petition for allowance of appeal denied*, 555 Pa. 735, 725 A.2d 184 (1998), for the proposition that a class action may not be maintained to obtain a refund of taxes resulting from an improper assessment. However, for the same reasons expressed above concerning the 2002 countywide reassessment, we conclude that the trial court did not err in dismissing Taxpayers' claims arising from the 2001 countywide re-assessment.

Based on the foregoing, we affirm the trial court's decision.

Judge PELLEGRINI concurs in the result.

## ORDER

AND NOW, this 15th day of April 2004, the order of the Court of Common Pleas of Allegheny County is affirmed.

Concurring and Dissenting Opinion by Judge FRIEDMAN.

I agree with the majority that the Court of Common Pleas of Allegheny County (trial court) properly dismissed the section 1983 claim filed by Henrietta Beattie, Gertrude Ellis, Karen Rummel, Sandra Walls, Kenneth Pierce and Mon Valley Unemployed Committee (together, Taxpayers) against Allegheny County, Pennsylvania, James Roddey, its Chief Executive, and Manatron, Inc. However, for many of the reasons stated in *Kowenhoven v. County of Allegheny,* 847 A.2d 172 (Pa.Cmwlth.2004) (Friedman, J., concurring and dissenting), I do not agree that the trial court properly dismissed Taxpayers' equitable claims on grounds that Taxpayers have an adequate legal remedy.